**Henry L. STAFFORD and Dynadrill, Inc., Appellants,**

**v.**

**Mrs. S. A. THORNTON, Appellee.**

**No. 7721.**

Court of Civil Appeals of Texas.

Amarillo.

June 19, 1967.

Rehearing Denied Sept. 5, 1967.

Cayton & Gresham, Karl Cayton, Lamesa, Morehead, Sharp, Boyd & Tisdel, Roger C. Henderson, Plainview, for appellants.

Stovall & Stovall, Frank Stovall, Plainview, for appellee.

DENTON, Chief Justice.

Mrs. S. A. Thornton, a widow, brought suit against Henry L. Stafford to recover for damages for land and improvements thereon alleged to have been caused by blasting operations in a nearby caliche pit. Stafford impleaded Dynadrill, Inc., as a third party defendant. The trial court's judgment, based on a jury verdict, was rendered for the plaintiff against Stafford for $40,000.00 plus interest, and judgment was rendered for Stafford over against Dynadrill for the same amount. Both defendants have appealed.

Appellee was the owner of a 320-acre farm in Floyd County. Stafford entered into a contract with the State Highway Department to construct a road in the area and employed Dynadrill to conduct blasting operations in a caliche pit approximately ½ mile west of the property. These blasting operations were conducted at intervals from June 4 to July 20, 1965.

Appellees alleged a cause of action for damages to a brick residence, a frame residence, a barn, one domestic water well, three irrigation wells, and an underground concrete pipe irrigation system connecting the three irrigation wells, was based on the premise appellee is a third party beneficiary under a written contract Stafford held with the State Highway Department; and an alternative ground that the defendants were negligent in causing explosions of such power and intensity as to produce violent shocks to the earth and damage appellee's land and improvements. In response to special issues, the jury found: (1) that appellee's property was damaged as a result of the blasting operations; (2A) that the defendant used more excessive charges of

explosives than a person of ordinary prudence would have used under the same or similar circumstances; (2B) that the use of excessive charges of explosives was a proximate cause of the damages; (3A) that the defendant failed to use utmost care not to endanger the property of appellee; (3B) that such failure resulted in the damage to appellee's property. "Utmost care" was defined as "that degree of care that would be exercised by a very cautious and prudent person under the same or similar circumstances". The jury further found the damages to the Thornton property were permanent; and found the difference between the cash market value of appellee's property immediately before and after the blasting operations was $40,000.00. It was also found the damage was not caused solely by blasting by other contractors not a party to this suit.

■ Appellants' first group of points of error contend there is no evidence and alternatively, insufficient evidence to support the jury finding excessive charges of explosives were used; and that appellants failed to use utmost care not to endanger appellee's property. In considering the "no evidence" issue, the evidence must be viewed in the light most favorable to the verdict and disregard that which is opposed or contrary to it. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114. Robertson v. Robertson, 159 Tex. 567, 323 S.W.2d 938.

As stated, appellee's 320-acre farm was located east of the caliche pit in question. Testimony relative to the exact distances from the pit to the various improvements on appellee's land was indefinite. There was testimony the "improvements" were approximately 2000 feet from the pit. The two residences were located on the west side of the farm and it appears they were approximately ½ mile east of the pit. The three irrigation wells were in the approximate center of the ½ section and were further to the east of the two residences, and were several hundred feet farther from the caliche pit. The blasting operations were performed two or three times a week during the interval from June 4 to July 20, 1965. A new brick home was moved onto appellee's premises prior to the blasting and was occupied by her son and family on June 7, three days after the blasting began. Mrs. Thornton occupied a frame house nearby. Members of appellee's family, a former tenant, and neighbors testified to experiencing the blasts. One testified "it would shake the house"; "You feel the ripple before you hear the blast. Then it seems that the walls of the house would expand and then come together again". Dishes would be rattled and several saw rocks and debris in the air following the blast. Damage to both residences were described after the blasting by several witnesses. These included a cracked foundation, cabinets on walls loosened, cracked bathroom tile, some outside bricks broken, plaster cracked, roof on the brick house sagged in the middle, and cracked concrete flooring in the barn and garage attached to the frame house. The irrigation wells produced approximately ½ the water produced prior to the blasting. Appellee's expert witness, a graduate geologist, examined the property and studied maps of the water levels of the surrounding area and measured the water level of appellee's irrigation wells. He testified that the damage to the wells was caused by the blasting.

The blasting operations were described in detail by the sales representative of the supplier of the explosives, and a Dynadrill employee who was the "shooter" on the job. They described the spacing, depth and diameter of the holes, the amount of the explosives used together with the firing delay pattern used during the operation. Some 30–35 holes were used for each "shot" and 3¾ inch diameter holes were spaced in rows nine feet apart with 12 foot spacing between holes. The amount of ammonianitrate, dynamite and other materials varied from 824 lbs. per shot to approximately 252 lbs.

■ It is well settled that liability for damages caused by the use of explosives is dependent upon the existence of negligence in the manner of setting up the explosives. Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221. Crain v. West Texas Utilities Co. (Tex.Civ.App.) 218 S.W.2d 512 (Ref.N.R.E.). Standard Paving Co. v. McClinton (Tex.Civ.App.) 146 S.W.2d 466. One test of negligence in a case involving explosives is whether an excessive amount of explosives is used. Universal Atlas Cement Co. v. Oswald, 138 Tex. 159, 157 S.W. 2d 636. Kelly v. McKay, 149 Tex. 343, 233 S.W.2d 121. This issue was submitted to the jury. The issue included a definition of "excessive" as being the use of a quantity greater "than a person of ordinary prudence in the exercise of ordinary care would have used under the same or similar circumstances". This definition was approved in the *Oswald* and *Kelly* cases.

It is appellants' contention the burden is upon the plaintiff to show a standard of care to be exercised by one engaged in the use of explosives and a departure from that standard. Appellants insist there is a total absence of evidence to sustain this burden. In support of its position, appellants rely principally upon Dellinger v. Skelly Oil Co. (Tex.Civ.App.) 236 S.W.2d 675 (Ref.N.R.E.). Indian Territory Illuminating Oil Co. v. Rainwater (Tex.Civ. App.) 140 S.W.2d 491 (Error Dis.). Stanolind Oil & Gas Co. v. Lambert (Tex.Civ. App.) 222 S.W.2d 125. Sinclair Oil & Gas Co. v. Gordon (Tex.Civ.App.) 319 S.W.2d 170. These cases were seismograph explosion cases and present different facts from the case at bar. The *Lambert* case held the doctrine of *res ipsa loquitor* was not applicable under the facts and circumstances of that case. In the *Gordon* case the question was whether the plaintiff had sustained its burden to show the defendant was negligent in exploding charges "too close" to plaintiff's water well. In the *Rainwater* case there was no finding of negligence. The court held negligence was not shown as a matter of law. In

*Dellinger*, the trial court withdrew the case from the jury and rendered judgment for the defendant. The court held the evidence raised issues of fact and the question of negligence should have been submitted to the jury. These cases do not support appellants' contention.

■ There was evidence that simultaneously with the explosions in the caliche pit, appellee's house shook and one sitting in a chair in the neighboring house felt as if one would "catch hold of the back of your chair and give you a shake with their hand". Cracks appeared in the brick house and foundation and walls of the frame house and floor of the barn, large rocks "as big as my head or larger" came from the blasts, kitchen cabinets were damaged and the water wells produced much less water of a dirty quality. When the evidence is considered most favorably to the appellee, we believe there was some evidence appellants used more explosives than was reasonably necessary. Kelly v. McKay (supra). Cage Brothers v. McCormick (Tex.Civ.App.) 344 S.W.2d 203 (Ref.N.R.E.). Pelphrey v. Diver (Tex.Civ.App.) 348 S.W.2d 453 (Ref. N.R.E.).

In addition to evidence offered by appellants as to the amount of explosives used, hole spacing, delayed firing patterns and other precautions used, appellants offered other evidence directly in conflict with evidence offered by appellee. A safety engineer inspected and approved the shooting plans; a blastcorder was placed on a neighbor's property which was some 700 feet closer to the pit than appellee's and tests showed no vibrations were recorded at that distance. Mr. William Miller, a Geo-science professor at Texas Technological College and Dr. Leet, professor of Seismology and Geology at Harvard testified for appellants. The latter's qualifications in the field of causes and effects of vibrations produced from explosives were most impressive. Both experts inspected the premises after the blasting. Miller examined the records of area water tables and tested appellee's

irrigation wells. His testimony was to the effect the blasting did not damage the wells. Dr. Leet examined appellee's property after the blasting, and after studying the blasting patterns, testified the vibrations caused by the blasting in question did not cause the damage to appellee's property, including the irrigation wells. The jury chose not to accept the opinions of these experts and the other evidence presented by appellants. When all the evidence is considered we are of the opinion there is sufficient evidence to support the jury finding appellants were negligent in using an excessive amount of explosives and that such negligence was a proximate cause of the alleged damages.

Appellants' next contention is the trial court erred in placing the burden upon them to exercise utmost care not to endanger the property of appellee; challenge the fact the State Highway contract imposes such a duty upon it; and asserts appellee is not a third party beneficiary under the contract. Subject to appellants' exceptions previously urged, the parties stipulated the Highway construction contract was entered into by and between Stafford as contractor and the State Highway Department; and that the contract contained provisions set out in the plaintiff's petition. One such material section was: "7.9 Use of Explosives. When the use of explosives is necessary for the prosecution of the work, the contractor shall use the utmost care not to endanger life or property". The question whether appellee is a third party beneficiary under the contract had been decided against appellants' contention. In Collins Construction Co. v. Taylor (Tex.Civ.App.) 372 S.W.2d 548 (Ref.N.R.E.), a contract with identical provisions was involved. Although the court was divided in the result, all justices were of the opinion the plaintiff in that case was a third party beneficiary under the contract. However, the question of the extent of the duty imposed by the contract was not before the court and was not decided.

Although we are of the opinion, and so hold, appellee was a third party bene-

ficiary under Stafford's contract, we are of the further view the contract did not impose a duty to exercise a higher degree of care toward the public than the law itself imposes. No Texas court has passed upon this question. However, in Wymer-Harris Construction Co. v. Glass, 122 Ohio St. 398, 171 N.E. 857, 69 A.L.R. 517, the plaintiff contended a contract with the County Commissioners imposed greater duties upon the contractor in addition to its common law duty to exercise ordinary care. The court held "[s]o we conclude the rule to be that the duty owing toward the public by a contractor in the performance of public work cannot be increased by a contract with a public official, as such, beyond the sum of the legal duty of such public official toward the public and the legal duty of the contractor toward the public". See also McClendon v. T. L. James & Co., 231 F.2d 802 (5th Cir.). Hansen v. Clyde, 89 Utah 31, 56 P.2d 1366, 104 A.L.R. 943. Oliver v. Pettaconsett Construction Co., 36 R.I. 477, 90 A. 764. Council v. Dickerson's, Inc., 233 N.C. 472, 64 S.E.2d 551. We think the better reasoned weight of authorities supports this holding. We therefore conclude the trial court erred in submitting the special issues imposing the duty upon appellant to use utmost care not to endanger the property of appellee. However, in view of other jury findings that appellants were negligent in using an excessive charge of explosives, and that such negligence was a proximate cause of appellee's damages, such error was harmless and would not warrant reversal.

Appellant Stafford contends there was no evidence and insufficient evidence to impose liability upon him. This contention relates to the relationship between Stafford and Dynadrill. Appellee filed suit against Stafford as the general contractor engaged in highway contract work and while so engaged, so performed the blasting operation which caused the alleged property damages. Stafford impleaded Dynadrill as a third party defendant, and alleged the latter was acting as an independent contrac-

tor. It is undisputed Dynadrill was conducting the blasting operations for Stafford. Under such circumstances there arises a rebuttable presumption that the relationship of master and servant exists. Ochoa v. Winerick Motor Sales Co., 127 Tex. 542, 94 S.W.2d 416. Newspapers, Inc. v. Love, 380 S.W.2d 582 (Sup.Crt.). Therefore, the burden of proof that there was an independent contractor relationship is upon the party asserting its existence as a defense to liability. Taylor B. & H. Ry. Co. v. Warner, 88 Tex. 642, 32 S.W. 868. Ochoa v. Winerick Motor Sales Co. (supra). Davis v. Mendlowitz (Tex.Civ.App.) 252 S.W.2d 996. There is no evidence in this record to either prove or disprove the independent contractor relationship of the parties. The only references made to this relationship were made in questions propounded to various witnesses. These referred to the fact Dynadrill "was doing the blasting for Henry Stafford" and "you were the subcontractor that Mr. Henry Stafford hired to do the blasting. * * *" Affirmative answers to such questions fall far short of sustaining the burden of proving an independent contractor relationship. After all parties had closed Stafford moved that he be permitted to introduce testimony relative to the relationship between the parties. This motion was not timely filed and its refusal was not error. In any event, it cannot be shown Stafford has been harmed. The trial court awarded judgment for Stafford over against Dynadrill for the amount of the judgment awarded appellee.

The next question concerns the damages awarded appellee. Appellee pleaded temporary damages to the two houses, barn, irrigation and domestic wells and underground irrigation systems and in the alternative, alleged the property sustained permanent injuries. The trial court submitted an issue inquiring whether the damage to the appellee's property was temporary or permanent. The jury found they were permanent and were not required to answer the damage issue conditioned upon the injuries being temporary. The jury, having found the appellee's property was permanently damaged, determined the damages by finding the difference between the cash market value immediately before and after the blasting operation. This is the proper measure of damages if the land has been permanently affected. Trinity & S. Ry. Co. v. Schofield, 72 Tex. 496, 10 S.W. 575. Lone Star Gas Co. v. Hutton (Tex.Com.App.) 58 S.W.2d 19. It is equally settled that the same measure of damages apply for permanent injuries to buildings short of total destruction. Crain v. West Texas Utilities Co. (supra). Houston Natural Gas Corp. v. Pearce (Tex. Civ.App.) 311 S.W.2d 899 (Ref.N.R.E.).

Appellant brings forward numerous points of error attacking the method of submission and lack of evidence to support the findings in addition to excessive damages. The burden of appellants' position is the method used in submitting the damage question deprived the jury of determining whether or not the different alleged damaged improvements were temporary or permanent, and that the manner of submission was contrary to the allegations and proof. In our opinion there was no evidence the injuries to the brick house, frame house and the underground irrigation system were permanent in the sense that they were not repairable. Much of the testimony of the contractor who supervised the building of the brick house dealt with the repairs of that house, and the estimated cost required to place the house in its original condition. The underground irrigation system had been repaired both before and after the blasting at a relatively small cost. Although a geologist testified the damages to the irrigation wells were permanent, the testimony was highly controverted. There was no evidence offered relative to the duration of the damages to the frame house, barn and garage and no testimony was offered concerning cost of repairs to these structures. In fact, neither

the barn nor the frame house nor garage were included in the damage issue inquiring if the injuries sustained were temporary.

 Although it is settled permanent improvements attached to the realty are considered a part of the realty, the same measure of damages for injuries to improvements and land does not necessarily apply. Damages may be recovered for injuries to improvements attached to the land independently of damages to the realty. Tucker v. Lane (Tex.Civ.App.) 312 S.W.2d 257. The measure of damages for repairable injury to a building is the amount necessary to restore the building to its condition immediately prior to its injury, and interest from the date of injury to the time of trial. Victory Truck Lines v. Brooks (Tex.Civ.App.) 218 S.W.2d 899. Cornell v. American Indemnity Co. (Tex. Civ.App.) 275 S.W.2d 702 (Ref.N.R.E.).

While both measures of damages were submitted to the jury, each was conditioned upon whether the damages to appellee's "property" was temporary or permanent. Under this method of submission, the jury could apply only one measure of damages. This method of submission is not supported by the record. There was probative evidence that the damages to the brick house, frame house, barn and underground irrigation system were temporary and repairable. There was no direct probative evidence these damages were permanent. There was evidence the damages to the three irrigation wells and domestic water well was permanent. There was no evidence the damages to appellee's "property" which included both the realty and improvements was permanent. The court's charge authorized the jury to consider elements of damages which were not supported by the evidence. Appellants' objections on these grounds should have been sustained.

The disposition we make of the case renders it unnecessary to discuss and pass on other points of error appellants have brought forth.

The judgment of the trial court is reversed and the cause remanded.