**BRIGHTON HOMES, INC., Appellant,**

v.

**Charles R. McADAMS and Nancy D. McAdams, Appellees.**

**No. C14–86–066–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 9, 1987.

Rehearing Denied Aug. 28, 1987.

---

Walter R. Grimes, Houston, for appellant.

Michael W. Melton, Houston, for appellees.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

Charles R. and Nancy D. McAdams brought suit against Brighton Homes, Inc., to recover damages under the Deceptive Trade Practices Act (DTPA) for structural defects in their purchased home. A jury trial resulted in findings for the McAdams on issues of liability, damages, and attorneys' fees. In response to Brighton Homes' motion for judgment notwithstanding the verdict, the trial court disregarded certain of the findings on damages and entered judgment for Mr. and Mrs. McAdams for a lesser amount. Both parties appeal. Finding that the court erred in disregarding the jury findings on diminished fair market value, we modify that portion of the trial court's judgment and reform the judgment so as to include the additional amount of damages for diminished fair market value found by the jury. The remainder of the judgment is affirmed.

Mr. and Mrs. McAdams purchased a new house from Brighton Homes in September 1976. Brighton Homes expressly warranted against defects in materials and workmanship. Within the warranty period, Mr. McAdams notified Brighton Homes in writing that there was a crack in the slab of the house and that the exterior and interior walls also had cracks near that in the slab. Brighton Homes attempted to correct the problems by re-anchoring a steel cable that had retracted into the concrete slab. It also attempted to seal the fissures in the walls by plastering over the cracks. Nevertheless, the crack in the slab continued to expand, allowing both water and insects to enter the home, while the cracks in the walls reopened and grew wider.

In their suit the McAdams alleged that Brighton Homes misrepresented the quality and workmanship of the home and breached the warranty to repair latent de-

fects. A jury found that defects caused a decrease in the fair market value of the house, that $39,000 would compensate Mr. and Mrs. McAdams for the decrease in value, and that the reasonable and necessary costs of repair of the defects would be $20,000. Upon motion of Brighton Homes for judgment notwithstanding the verdict, the trial court disregarded the jury's response to the issues regarding fair market value and entered judgment for $85,000, representing cost of repairs of $20,000, trebled as required by the DTPA, and attorneys' fees of $25,000.

The principal issues of this appeal and cross-appeal concern the correct measure of damages for breach of warranty under the DTPA and the correct date on which damages must be determined.

■ In their first point of error, Mr. and Mrs. McAdams contend that the trial court erred in denying them damages awarded by the jury for the decrease in the fair market value of the home. They assert that the proper measure of damages includes the reduction in the fair market value of the property. We agree. The act specifically provides for the recovery of "actual damages" found by the jury to have been caused by a DTPA violation. Tex.Bus.Com.Code Ann. § 17.50(b)(1) (Vernon Supp.1986–1987). In DTPA cases the appellate courts have been flexible, approving various measures of damages to allow plaintiffs to recover the greatest amount of "actual damages" alleged and established by proof to have been factually caused by the defendant's conduct. *Building Concepts, Inc. v. Duncan,* 667 S.W.2d 897, 901 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Woo v. Great Southwestern Acceptance Corp.,* 565 S.W.2d 290, 298 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). In a parallel case involving a house with a defective foundation, this court specifically approved an award for diminished value. *Precision Homes, Inc. v. Cooper,* 671 S.W.2d 924, 928 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

The evidence presented at trial showed that the fair market value of the house was less than it would have been had the house had no foundation and drainage problems. The damage award entered by the trial court, based on the cost of repairing the foundation, was but one of several elements of "actual damages," all of which contributed to the decrease in fair market value of the home. The jurors heard testimony that the slab was not built high enough to allow effective drainage from the property to the street, that the repair of the foundation alone would require that the house be vacated, and that, even after repair, the value of a residence could be adversely affected by its reputation for having poor drainage and having once had a cracked slab. One witness estimated that the cost of repairing the drainage problem would exceed the value of the house. The Deputy Chief of the Department of Housing and Urban Development testified that because the slab was not built high enough or rigid enough, the house would not qualify for a Federal Housing Authority (FHA) or a Housing and Urban Development (HUD) mortgage loan at the time of trial. An expert real estate appraiser testified that in order to sell the home Mr. and Mrs. McAdams would have to disclose to any buyer the defects in the home. This evidence shows that the cost of repair alone would not fully compensate Mr. and Mrs. McAdams for actual damages caused by the conduct of Brighton Homes in violation of the DTPA. We, therefore, hold that the trial court erred in disregarding the jury's findings of diminished fair market value. The first point of error of Mr. and Mrs. McAdams is sustained. We do not reach the remaining points of error of Mr. and Mrs. McAdams as they are framed as alternatives to point one.

■ By point of error one in its cross-appeal and by its reply to the McAdams' appeal, Brighton Homes attacks the issues submitted on fair market value and on cost of repair on the theory that the issues are fatally defective because neither measures the alleged damages at the time the DTPA was violated. In support of its contentions Brighton Homes cites several Texas appellate cases in which the courts have approved remedial damages measured at the

time of the injury: *Building Concepts v. Duncan,* 667 S.W.2d 897 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Fidelity & Deposit Co. of Maryland v. Stool,* 607 S.W.2d 17 (Tex.Civ.App.—Tyler 1980, no writ); *Stafford v. Thornton,* 420 S.W.2d 153, 160 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.). In each of these cases the injury was determined to have occurred at a specific, identifiable time. For example, the property of the plaintiff, in *Stafford* had been damaged by defendants' blasting operations. Brighton Homes seeks to fix the time of the injury at the time the foundation is alleged to have failed, within two years of the date the house was completed. The McAdams, however, claim that the injury to them was a continuing one in that the unrepaired foundation continued to cause damage to other parts of the house up until the time of trial.

The Supreme Court of Texas has determined that "actual damages" as provided in the DTPA are those damages recoverable at common law. *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 939 (Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). At common law, when one isolated event does not cause all the damage to the property, but rather the total damage is the result of a continuing cause, actual damage is not determined immediately after the injury begins. *Burns v. Lamb,* 312 S.W.2d 730, 734 (Tex.Civ.App.—Fort Worth 1958, writ ref'd n.r.e.). Where there is a continuing cause of damage, measuring the damage immediately after the initial injury would be unduly restrictive and would not compensate plaintiffs fully for their injury. *Robinson Machinery Co. v. Davis,* 689 S.W.2d 286, 288 (Tex.App.—Waco 1985, writ ref'd n.r. e.). *See also Brown Foundation Repair & Consulting, Inc., v. McGuire,* 711 S.W.2d 349, 353 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Salais v. Martinez,* 603 S.W.2d 296, 297 (Tex.Civ.App.—El Paso 1980, no writ). *Salais* also involved a DTPA claim against the seller of a home for failure to make promised repairs. The court held that the failure to make repairs was a continuing breach so that the cause

of action still existed as long as the repairs were not made. *Salais,* 603 S.W.2d at 297.

In arguing the theory that the injury occurred when the foundation failed and that it did nothing to prevent the McAdams from repairing the failed foundation, Brighton Homes contends that the damages awarded do not bear the requisite reasonable relationship in time and circumstance to the producing cause of the damages. The argument is flawed. Brighton Homes' theory concentrates only on its failure to build the home in a good and workmanlike manner. Mr. and Mrs. McAdams also pleaded and proved that Brighton Homes had warranted that they would repair latent defects. Its failure to do so is as much a violation of the DTPA as the faulty workmanship. Evidence presented at trial showed that the acts and omissions of Brighton Homes in leaving the cracked foundation unrepaired caused injury to other parts of the house that increased in severity over the years. We hold that the failure to repair constituted a continuing breach and was a continuing cause of damage to the McAdams up until the time of trial. Brighton Homes' first point of error is overruled.

■ In its second point of error, Brighton Homes argues that judgment should not have been entered based upon the jury's finding as to the cost of repair because there was no evidence of repair costs at the time of the breach. To determine a "no evidence" point, the appellate court must consider only the evidence that supports the judgment and reject all evidence to the contrary. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696–97 (Tex.1986). As in its first point of error, Brighton Homes seeks to limit the time of the injury to the date on which the foundation originally failed. It is true that there is no evidence of the cost of repairs at the time the foundation problems began. The McAdams presented witnesses at trial who testified as to the present cost of repairs: $11,760 to repair the slab, $59,480 to raise the slab to correct the failed slab and the drainage problem, and an unspecified additional amount to repair the driveway. Hav-

ing held that Brighton Homes' failure to honor the warranty to repair was a continuing injury, we find that there was evidence to support the jury's finding of $20,000 for reasonable and necessary costs to repair. Point of error two is overruled.

By cross-point Brighton Homes contends that the issues on diminished fair market value should not have been submitted because there was no evidence of diminished fair market value at the time of the breach. In so arguing, Brighton Homes reasserts its position that the injury occurred when the foundation failed. This court has determined that diminished fair market value is a correct measure and that the breach was a continuing one. An expert real estate appraiser testified at trial that the foundation and drainage problems had decreased the value of the house. This testimony, combined with other evidence recited earlier in this opinion, supports the jury finding of $39,000 damage for diminished fair market value. Brighton Homes' cross-point is overruled.

In its third point of error, Brighton Homes contends that the trial court erred in rendering judgment awarding the McAdams attorneys' fees because there was no evidence to support the jury's finding. Brighton Homes contends that the case was tried under the 1973 version of the DTPA which states that "each consumer who prevails may obtain ... court costs and attorneys' fees *reasonable in relation to the amount of work expended.*" (Emphasis added.) Tex.Bus.Com.Code § 17.-50(b)(1). Brighton Homes argues that no testimony was offered as to the number of hours the McAdams' counsel spent on the case, and, therefore, no evidence was offered to show that the attorneys' fees were reasonable in relation to the amount of work expended. Brighton Homes offers no explanation for its statement that the 1973 version of the Act applies. We do not need to reach the issue of whether the 1973 version or a later amendment to the DTPA applies. The jury heard testimony that over a six-year period counsel for the McAdams had met with his clients many times, visited the home, conducted corre-

spondence in connection with the suit, engaged in numerous telephone conversations, arranged for inspections, and deposed witnesses. The jury saw a portion of the papers, work records and depositions that were reviewed in preparation for the suit. The jury further observed the counsel conduct a six-day trial. Counsel for the McAdams testified that over the six years of his employment his billing rate had increased from $85 to his present rate of $160 per hour. He testified that he had failed to record many hours he had spent working on the case, but that those hours which he had recorded, multiplied times the applicable billing rate, would result in $36,-000 in attorneys' fees generated before the six-day trial. There is no strict requirement that the work of an attorney be expressed in terms of hours spent; the amount of work expended can be proved by alternative methods, including evidence of what tasks were untaken on behalf of the client. There is sufficient evidence in the record to justify the jury finding of $25,000 in attorneys' fees under either the 1973 or 1979 version of the Act. Brighton Homes' third point of error is overruled.

We modify the trial court's judgment insofar as it omitted the damages found by the jury in the amount of $39,000 for diminished fair market value and order judgment in the total amount of $202,000 plus interest at the legal rate from the date of judgment. The judgment of the trial court is accordingly affirmed as modified.

ELLIS, Justice, dissenting.

Finding myself in disagreement with the other members of the panel, I would like to record my respectful dissent.

In their suit the McAdams alleged that Brighton Homes misrepresented the quality and workmanship of the home and breached the warranty to repair latent defects. A jury found that defects caused a decrease in fair market value of the house, that $39,000 would compensate Mr. and Mrs. McAdams for the decrease in value, and that the reasonable and necessary costs of repair of the defects would be $20,000. Upon motion of Brighton Homes

for judgment notwithstanding the verdict, the trial court disregarded the jury's response to the issues regarding fair market value and entered judgment for $85,000, representing cost of repairs of $20,000, trebled as required by the DTPA, plus attorneys' fees of $25,000.

The majority opinion modified the trial court's judgment insofar as it omitted the damages found by the jury in the amount of $39,000 for diminished fair market value, and rendered judgment in the total amount of $202,000 plus interest from the date of judgment.

The result of the opinion awarded the McAdams a double recovery. They received $39,000 for the decrease in fair market value of the house plus $20,000 for reasonable and necessary costs of repair. The sum of $59,000 was then tripled under the DTPA and $25,000 attorneys' fees added for a total sum of $202,000.

The measure of damages for permanent injury to a building, short of total destruction, is the difference between market value before the injury and market value immediately after the injury. The measure of damages for a reparable injury to a building is the amount necessary to restore the building to its condition immediately prior to its injury, plus interest from the date of the injury to the time of trial. *Stafford v. Thornton,* 420 S.W.2d 153 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.).

Following these principles, the McAdams should not recover damages for the decreased market value of their home. The testimony of the McAdams' expert witnesses indicated that any structural defects to their home were reparable, that repairs were feasible, and that at least one method of repair did not involve unreasonable economic waste. Therefore, cost of repair, rather than decrease in fair market value, is the proper measure of damages in this case. *De Los Santos v. Alamo Lumber Co.,* 683 S.W.2d 48 (Tex.App.—San Antonio 1984, no writ).

Furthermore, there was no evidence in the record of the amount of the decrease in fair market value of the home at the time

of Brighton Homes' alleged violations of the Deceptive Trade Practices Act.

I would affirm the trial court's judgment in its entirety.