Affirmed as Modified in Part, Reversed and Remanded in Part, and Majority
and Dissenting Opinions filed January 20, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00983-CV

___________________

 

Thomas J. Hennen, Appellant

 

V.

 

Jerry McGinty and Villas By Design, Inc.,
Appellees



 



 

On
Appeal from the 157th District Court

Harris County,
Texas



Trial Court Cause No. 2005-41193

 



 

 

MAJORITY OPINION

            Appellant, Thomas J. Hennen, contracted with appellee,
Villas By Design, Inc., (“VBD”) for the construction of his residence.  The second
appellee, Jerry McGinty, is the owner and manager of VBD.  Appellant, dissatisfied
with the quality of the construction, as well as appellees’ efforts to correct
the problems, filed suit asserting numerous causes of action against several
defendants, including appellees.  The case eventually went to trial with only
appellees as defendants and the jury found in favor of appellant on most of
appellant’s causes of action.  Following the verdict, appellees moved for judgment
notwithstanding the verdict, which the trial court granted in part and denied
in part.  The trial court then rendered judgment in favor of appellant only on
his breach of contract cause of action against VBD in the amount of $651,230.72. 
Appellant now appeals from that judgment in his favor.

Factual and Procedural
Background

            Appellant
purchased a vacant lot facing Galveston Bay from Villas By the Sea, L.L.C. in
February 2001.  Appellant signed an earnest money contract (the “Earnest Money Contract”)
with VBD to construct a residence on that lot in May 2001.  McGinty signed the Earnest
Money Contract on behalf of VBD.  The Earnest Money Contract provided that VBD
warranted the home in accord with the terms of a limited home warranty provided
by a third party: ACES, Inc.  As the residence was nearing completion,
appellant needed to close on its purchase for purposes of permanent financing. 
As a result, on September 18, 2002, the parties entered into a second contract
regarding the completion of specified “punch list” items (the “Punch List
Contract”).  Again, McGinty signed on behalf of VBD.  Appellant moved into the
house in November 2002.

            Once
appellant moved into his house, he began to experience a litany of problems. 
Appellant struggled to get VBD to successfully address those problems as well
as completing the punch list items.  Among the problems experienced by
appellant was water intrusion into his house.  The evidence reveals that prior
to June 20, 2003, appellant was aware of leaks/water intrusion in numerous
areas of his house.  These areas included, but were not limited to, the dining
room windows; the “Bridge,” an elevated walkway connecting different areas of
his house; the windows in the library that were located under the Bridge; the
windows on either side of the Bridge; the garage; and the media room near a set
of French doors.

These problems with
water intrusion were well documented in appellant’s communications with
appellees.  For example, on June 17, 2003, appellant wrote VBD:

            Will you and TNR be addressing “all” the window
issues?  …  Also, are the window “weephole” issues strictly an issue of
stucco/paint having covered them, or is there any window defect issue
associated with the “leak” problems encountered?  On that note, the horizontal
framing above the walkway column capitals, is leaking again….

Additionally, it appears that the whole reason for this
specific stucco job in the first place, that of repairing leakage, may not be
completely repaired.  You had indicated that there may still be problems with
the upper level windows causing continuing leakage.  This problem must be
corrected. ***** The leak is still there*****

            In
an email sent on June 19, 2003, appellant asked VBD to return the keys to his
house and informed VBD that, commencing June 23, 2003, he would begin pursuing
all legal recourse available to him.

The next day, June 20,
2003, appellant sent a lengthy email to VBD advising that he had met with a
lawyer and now had an understanding of the Texas Residential Liability Act. 
Appellant also pointed out the continuing problem with leaks, including a
“newly discovered problem with an interior library window casement.  It appears
it may have experienced water leakage.”  Appellant then repeatedly mentioned
the possibility of litigation over the leaks and other issues; then warned: “I
have another appointment Monday with my attorney to begin the process.”

On July 4, 2003, appellant
found extensive and noticeable mold damage to the vertical walls going up to
the ceiling in an upstairs bathroom.  On July 10, 2003, appellant retained a
lawyer to represent him in the ongoing dispute with VBD.  In August,
appellant’s lawyer recommended that appellant have his home inspected for
mold.  On August 20, 2003, a company called PE Services inspected appellant’s
house and conducted mold testing.  PE Services issued its report on October 7,
2003.  PE Services determined there was significant fungal contamination
throughout the house.  After appellant had received the PE Services’ report,
water damage and mold was identified in the exterior walls, interior walls,
ceilings, flooring, around several plumbing fixtures, and inside the HVAC
systems.  Appellant learned that water penetration in the house was so
widespread that to repair the damage would require the replacement of the
entire roof, the replacement of all of the home’s stucco, and the replacement
of every window in the house.  It was further determined that the total cost to
repair the house would be $651,230.72.

Despite appellant’s June
20, 2003 warning that he was about to begin the legal process, suit was not
filed until June 22, 2005.  Appellant sued VBD for breach of both the Earnest
Money Contract and the Punch List Contract, violations of the Texas Deceptive
Trade Practices Act (“DTPA”), and breach of express and implied warranties. 
Appellant also sued McGinty for negligence, violations of the DTPA, breach of
express and implied warranties, and breach of the Punch List Contract.[1]  Appellant also
sought attorney’s fees and exemplary damages.

Prior to trial, the
trial court granted in part and denied in part a motion for summary judgment
filed by appellees.  The trial court determined that McGinty was not liable in
his individual capacity on the Earnest Money Contract.  It also determined that
appellant had waived any implied warranties. 

The case eventually went
to trial on the remaining claims and the trial court submitted the case to the
jury on nineteen questions.  With respect to McGinty, the jury found that he
(1) was negligent (Question 1); (2) breached an express warranty and the
implied warranty of good and workmanlike performance (Question 10); (3) engaged
in a false, misleading, or deceptive act or practice that appellant relied on
to his detriment (Question 11); (4) engaged in unconscionable conduct (Question
12); and (5) acted knowingly and/or intentionally (Question 14).

With respect to VBD, the
jury found that VBD had (1) breached the Earnest Money Contract (Question 4);
(2) breached the Punch List Contract (Question 7); (3) breached an express
warranty and the implied warranty of good and workmanlike performance (Question
9); (4) engaged in a false, misleading, or deceptive act or practice that
appellant relied on to his detriment (Question 11); (5) engaged in
unconscionable conduct (Question 12); and (6) acted knowingly and/or
intentionally (Question 14). 

In response to the damage
questions for each cause of action, the jury found actual damages in the amount
of $262,885.83 for diminution in value after repairs and $651,230.72 for cost
of repair.  In response to Question 15, the jury awarded exemplary damages
against both McGinty and VBD for $750,000.00 each.  In response to Question 17,
the jury determined that appellant’s reasonable and necessary attorney’s fees
were $175,000.00 for preparation and trial, $15,000.00 for an appeal to the
court of appeals, and an additional $10,000.00 for an appeal to the Supreme
Court of Texas.

Appellees submitted
Questions 18 and 19 regarding their limitations affirmative defense.  With
respect to both, the jury found that October 20, 2003, the date appellant
obtained the first mold report, was the date by which appellant should, in the
exercise of reasonable diligence, have discovered appellees’ negligence, breach
of warranty, false, misleading, or deceptive acts, or unconscionable conduct.

Following the verdict,
appellees filed a motion to disregard the jury findings and for judgment notwithstanding
the verdict (“JNOV”), which the trial court granted in part and denied in part. 
Specifically, the trial court granted the motion to disregard the jury’s
answers to Questions 18 and 19 and found that all causes of action based upon
the DTPA and negligence were barred by limitations.  The trial court also
granted appellees’ motion to disregard Question 8, the Punch List Contract
damages question, on the basis that there was no evidence that a breach of the
Punch List Contract created the necessity for remediation and rebuilding of
appellant’s home.  The trial court denied the motion based upon the arguments
that appellant failed to prove any legally recoverable damages and that the
economic loss rule barred any recovery.  The trial court denied as moot the
arguments that there was no evidence that McGinty breached the standard of
care, that there was no evidence that McGinty gave an express or implied
warranty, and that there was no evidence to support a finding of liability
under the DTPA.

On September 16, 2008,
the trial court signed and entered judgment against VBD and in favor of appellant,
finding that appellant should recover the amount of $651,230.72 from VBD and
that he take nothing from McGinty.  Under the judgment appellant was not awarded
attorney’s fees or prejudgment interest.

On October 6, 2008,
appellant filed a motion for judgment along with a proposed judgment.  The
motion requested that the trial court award appellant his attorney’s fees,
interest, and also enter judgment against McGinty individually since the
statute of limitations for warranty claims is four years.  The trial court did
not modify its judgment in response to this motion and it was overruled by
operation of law.  This appeal followed.

Discussion

            Appellant
brings four issues on appeal.  In addition, appellees assert five cross-issues
on appeal.  We address only those necessary to the final disposition of this
appeal.  Tex. R. App. P. 47.1.

 

I.         Did
the trial court err when it did not include prejudgment interest in the final
judgment?

            In
his first issue, appellant contends the trial court erred when it did not
include an award of prejudgment interest in the final judgment.  We agree.

            A
prevailing party receives prejudgment interest as a matter of course.  Baker
Hughes Oilfield Operations, Inc. v. Hennig Production Co., 164 S.W.3d 438,
447 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  In addition, the Texas
Finance Code specifically provides that prejudgment interest is recoverable on
claims of property damage.  See Tex. Fin. Code Ann. § 304.102 (West 2006). 
The damages asserted by appellant, and found by the jury, constitute property
damage.  We hold the trial court erred when it did not include prejudgment
interest in the final judgment.  See Olympia Marble & Granite v. Mayes,
17 S.W.3d 437, 441 (Tex. App.—Houston [1st Dist.] 2000, no pet.).  Accordingly,
we sustain appellant’s first issue on appeal.

II.        Did
the trial court err when it did not include an award of appellant’s attorney’s
fees in the judgment?

            In
his second issue, appellant asserts the trial court erred when it did not
include an award of his reasonable and necessary attorney’s fees.[2]  In response,
appellees respond only that the trial court’s failure to award appellant his
attorney’s fees was harmless error.

            Whether
a party is entitled to recover attorney’s fees is a question of law for the
trial court, which we review de novo.  See Holland v. Wal-Mart Stores, Inc.,
1 S.W.3d 91, 94–95 (Tex. 1999).  A party may recover reasonable attorney’s fees
in a suit founded on a claim for breach of contract.  Tex. Civ. Prac. &
Rem. Code Ann. § 38.001(8) (West 2008).  The party must prevail and recover
damages on a cause of action for which the recovery of attorney’s fees is
allowed.  Green Int’l v. Solis, 951 S.W.2d 384, 390 (Tex. 1997).  Under
section 38.001, an award of attorney’s fees is mandatory if there is proof of
the reasonableness of the fees.  Id.; Recognition Communs., Inc. v.
Am. Auto. Ass’n, Inc., 154 S.W.3d 878, 891 (Tex. App.—Dallas 2005, pet.
denied); Budd v. Gay, 846 S.W.2d 521, 524 (Tex. App.—Houston [14th
Dist.] 1993, no writ).  A determination of reasonable attorney’s fees is a
question for the trier of fact.  Cordova v. Southwestern Bell Yellow Pages,
Inc., 148 S.W.3d 441, 446 (Tex. App.—El Paso 2004, no pet.) (citing
Stewart Title Guaranty Co. v. Sterling, 822 S.W.2d 1, 12 (Tex. 1991)).   A
trial court does not have the discretion to completely deny attorney’s fees if
they are proper under section 38.001.  Id. 

            Here,
appellant’s lead trial counsel testified that appellant’s attorneys had spent
between 500 and 700 hours working on the case.  He also testified that he had
been licensed in the State of Texas since 1980 and had tried cases in Harris
County.  In addition, he testified that a reasonable rate in Harris County for
attorneys with their experience was $350 to $450 per hour.  Appellant’s lead trial
counsel also testified that appellant had a contingent fee agreement with his
attorneys and that all hours spent were necessary to the prosecution of the
case.  Appellant’s trial counsel further testified that his co-counsel had kept
written records of the time spent on appellant’s case and 500 hours was a very
low estimate of the amount of time spent on appellant’s case.  Appellant’s
trial counsel testified that a reasonable and necessary fee for preparation and
trial of appellant’s case would be $175,000.  In addition, appellant’s trial
counsel testified that if the case were appealed to the court of appeals, the
cost, if fees were charged on an hourly basis, would be between $15,000 and
$20,000.  Finally, he testified that if it were appealed to the Texas Supreme
Court, the cost would be an additional $10,000.      

The jury found that VBD
breached the Earnest Money Contract and determined that, as a result of VBD’s
breach, appellant suffered significant damage.  In addition, the jury
determined that appellant’s reasonable attorney’s fee for preparation and trial
was $175,000.  It also found that $15,000.00 was the cost for an appeal to the
court of appeals, and an additional $10,000.00 for an appeal to the Supreme
Court of Texas.  We conclude the evidence recited above is some evidence
supporting the jury’s finding.  Accordingly, we hold the trial court erred when
it did not include an award of appellant’s reasonable attorney’s fees in the
final judgment.  See Cordova, 148 S.W.3d at 446.  We sustain
appellant’s second issue on appeal.

III.      Are
appellant’s negligence and DTPA causes of action barred by limitations?

            In
his third issue, appellant asserts the trial court erred when it disregarded
the jury’s answers to questions 18 and 19 in the jury charge and dismissed
appellant’s negligence and DTPA causes of action based on limitations.  In
essence, appellant argues the statute of limitations should not begin to run
until he discovered the full extent of the harm he suffered as a result of the appellees’
allegedly negligent or deceptive acts.  In response, appellees assert the trial
court correctly dismissed those claims because the evidence conclusively
established that the two-year statute of limitations applicable to appellant’s
negligence and DTPA causes of action began to run more than two years before
appellant filed suit on June 22, 2005.  We agree with appellees.

            A.        The
standard of review.

            JNOV
is proper when the evidence is conclusive and one party is entitled to prevail
as a matter of law, or when a legal principle precludes recovery.  Autry v.
Dearman, 933 S.W.2d 182, 190 (Tex. App.—Houston [14th Dist.] 1996, writ
denied).  When a claim is barred by limitations, judgment on the verdict is
precluded and JNOV is proper.  Id. at 190–91.  An appellate court will
affirm a JNOV when the record demonstrates that a claim found by the jury is
barred as a matter of law.  Id. at 191.

            B.        Limitations
bars appellant’s negligence and DTPA causes of action.

            A
party must assert a claim for negligence no more than two years after the day
the cause of action accrues.  Tex. Civ. Prac. & Rem. Code Ann. § 16.003
(West Supp. 2009).  DTPA claims must be brought within two years after the
consumer discovered or in the exercise of reasonable diligence should have
discovered the occurrence of the false, misleading, or deceptive act or
practice.  Tex. Bus. & Com. Code Ann. § 17.565 (West 2002).

Generally, a cause of
action accrues when a wrongful act causes an injury, regardless of when the
plaintiff learns of the injury.  Childs v. Haussecker, 974 S.W.2d 31, 36
(Tex. 1998).  This is true even if the fact of injury is not discovered
until later and even if all resulting damages have not yet occurred.  S.V.
v. R.V., 933 S.W.2d 1, 4 (Tex. 1996).     In certain, limited
circumstances, Texas courts apply the discovery rule as an exception to the
general accrual rule.  Computer Assoc. Int’l, Inc. v. Altai, Inc., 918
S.W.2d 453, 456 (Tex. 1994).  To apply, the discovery rule requires that the
injury be inherently undiscoverable and objectively verifiable.  Id. 
When applied, the discovery rule tolls the running of limitations until the
plaintiff discovers the injury, or acquires knowledge of facts which, in the
exercise of reasonable care and diligence, would lead to the discovery of the
wrongful act and resulting injury.   Li v. University of Texas Health
Science Ctr. at Houston, 984 S.W.2d 647, 652 (Tex. App.—Houston [14th
Dist.] 1998, pet. denied) (citing   S.V., 933 S.W.2d at 4).  In
cases where the discovery rule applies, accrual occurs, and limitations begin
to run, when the plaintiff knew or should have known of the wrongfully caused
injury, not when the plaintiff knew of the specific nature of each wrongful act
that may have caused injury.  KPMG Peat Marwick v. Harrison County Hous.
Fin. Corp., 988 S.W.2d 746, 749 (Tex. 1999).  Once a plaintiff knows, or in
the exercise of reasonable diligence should have known of the injury, “the
limitations clock is running, even if the claimant does not yet know: the
specific cause of the injury; the party responsible for it; the full extent of
it; or the chances of avoiding it.”  PPG Indus., Inc. v. JMB/Houston Ctrs.
Partners Ltd. P’ship, 146 S.W.3d 79, 93–94 (Tex. 2004).

Assuming without
deciding that the discovery rule applies to appellant’s negligence claims, we
conclude the evidence, recounted above, conclusively demonstrates that
appellant’s negligence and DTPA causes of action accrued more than two years
before appellant filed suit on June 22, 2005.  Appellant’s own communications
with appellees reveal that, by June 20, 2003, at the latest, he knew, or should
have known, that he had suffered a legal injury.  In fact, in his June 20, 2003
email, appellant threatened imminent legal action.  Curiously, he waited more
than two years to follow through with this threat.  Therefore, even though
appellant may not have known on June 20, 2003 that he had a problem with mold
growing throughout his house, we hold the limitations clock was running on
appellant’s negligence and DTPA causes of action at that point in time.  See
Cornerstones Mun. Util. Dist. v. Monsanto Co., 889 S.W.2d 570, 576 (Tex. App.—Houston
[14th Dist.] 1994, writ denied) (holding that discovery rule tolled limitations
only until plaintiff learned of damaged pipe, rather than until plaintiff
discovered widespread problems with the sewer system, because knowledge of the
damaged pipe would cause a reasonably prudent person to make an inquiry that
would lead to the discovery of the system-wide problems); Bayou Bend Towers
Council of Co-Owners v. Manhattan Construction Co., 866 S.W.2d 740, 743–45
(Tex. App.—Houston [14th Dist.] 1993, writ denied) (concluding that, even under
the discovery rule, limitations began to run upon the discovery of water leaks
in roof because this discovery would cause a reasonable person to make an
inquiry that would lead to the discovery of the cause of the leaks).  Because
appellant did not file suit until June 22, 2005, his negligence and DTPA causes
of action were barred by limitations and the trial court was correct to grant
appellees’ JNOV on that basis.  We overrule appellant’s third issue on appeal.

IV.      Did
the trial court err when it failed to enter judgment against McGinty
individually for breach of warranties?

            In
his live pleading at the time of trial, appellant asserted appellees had
breached both express and implied warranties.  Appellant asserted these claims
as both DTPA and separate breach of warranty causes of action.  However, in
that pleading, appellant expressly excluded appellees from his breach of the implied
warranty of good and workmanlike performance of their services allegations.[3]  During the charge
conference, appellees objected to the submission of the separate warranty
questions on the basis of no evidence to support their submission as well as
the lack of pleading.  The trial court overruled their objections and submitted
the separate breach of warranty questions.

In response to Question
10, the jury found that McGinty had failed to comply with express warranties as
well as the implied warranty of good and workmanlike performance.  The jury
also found that appellant had been damaged as a result of those breaches.  Following
the verdict, McGinty moved for JNOV on those claims on the basis that there was
no evidence to support a finding that McGinty gave appellant any express or
implied warranties.  In the order on appellees’ motion for JNOV, the trial
court appears to have found that appellant’s separate warranty claims fell under
the two-year DTPA statute of limitations and did not address appellees’ no
evidence arguments as moot.  The trial court then rendered a final judgment
that did not include any damages for breach of express and implied warranties
by McGinty.

In his fourth issue,
appellant contends the trial court erred when it did not enter judgment against
McGinty for breach of express warranties and breach of the implied warranty of
good and workmanlike performance.  In their first cross-issue on appeal,
appellees contend the trial court erred when it did not dismiss all warranty
claims against both McGinty and VBD.[4] 
We address these issues together.

A.        Breach of
the Implied Warranty of Good and Workmanlike Performance of Services.

Initially, McGinty
contends the trial court erred in submitting to the jury the issue of whether
he breached the implied warranty of good and workmanlike performance of
services because appellant did not include that cause of action in his Fifth
Amended Petition.  We agree.  Not only did appellant not plead this cause of
action, he expressly excluded McGinty from it: “[a]ll these Defendants, with
the exception of Jerry McGinty and Villas By Design, gave implied warranties of
good and workmanlike performance.”

Jury questions must be
supported by the pleadings.  See Tex. R. Civ. P. 278 (“The court shall
submit the questions, instructions, and definitions in the form provided by
Rule 277, which are raised by the written pleadings and the evidence.”); Webb
v. Glenbrook Owners Ass’n, Inc., 298 S.W.3d 374, 380 (Tex. App.—Dallas
2009, no pet.).  “Although issues may be tried by consent, ‘written pleadings,
before the time of submission, shall be necessary to the submission of
questions ….’”  Id. (quoting Tex. R. Civ. P. 67).  There can be no trial
by consent when the complaining party properly objects to the submission of
issues not raised by the pleadings.  Id.  A clear abuse of discretion
exists when the trial court submits a jury question that is not supported by
the written pleadings, nor tried by consent.  Id.

Here, McGinty objected
to the submission of the implied warranty of good and workmanlike performance
of services question on the basis that it had not been pled.  The trial court
overruled the objection and submitted the question to the jury, which, in turn,
answered the question affirmatively.  We conclude the trial court abused its
discretion when it overruled McGinty’s objection to the submission of the
implied warranty question and included it in the jury charge.  Because the
issue should not have been submitted to the jury, we overrule appellant’s
fourth issue to the extent it contends the trial court erred in not entering
judgment against McGinty for breach of the implied warranty of good and
workmanlike performance of services.  See Hall v. Hubco, Inc.,
292 S.W.3d 22, 27 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (stating a
trial court may disregard a jury finding if it is immaterial and that a finding
is immaterial if it should not have been submitted to the jury).  Because the
trial court ultimately did not include any damages for breach of the implied
warranty of good and workmanlike performance of services in the judgment, we
conclude the error in submitting the issue to the jury was harmless.  We
overrule McGinty’s first cross-issue on appeal as it applies to appellant’s
breach of the implied warranty of good and workmanlike performance of services
cause of action.

B.        Breach of
express warranties.

In the second part of
his fourth issue, appellant complains of the trial court’s failure to include
the damages found by the jury for McGinty’s breach of express warranties.  In
the second half of his first cross-issue, McGinty contends there is no evidence
that McGinty gave any express warranty that resulted in damages to appellant. 
Once again, we agree with McGinty.

It is well-established
that express warranties are enforced in service transactions.  Southwestern
Bell Tel. Co. v. FDP Corp., 811 S.W.2d 572, 576 (Tex. 1991).  The elements
of a claim for breach of warranty for services are (1) the defendant sold
services to the plaintiff; (2) the defendant made a representation to the
plaintiff about the characteristics of the services by affirmation of fact, by
promise, or by description; (3) the representation became part of the basis of
the bargain; (4) the defendant breached the warranty; (5) the plaintiff
notified the defendant of the breach; and (6) the plaintiff suffered injury.  Paragon
Gen. Contractors, Inc. v. Larco Constr., Inc., 227 S.W.3d 876, 886 (Tex.
App.—Dallas 2007, no pet.) (citing Southwestern Bell Tel. Co., 811
S.W.2d at 576–77 & n. 3).  Appellant’s breach of express warranty cause of
action founders on the first element because there is no evidence in the record
that McGinty, individually, sold any services to appellant.  Therefore, we
overrule the second half of appellant’s fourth issue.  In addition, while the
trial court should have granted McGinty’s motion for JNOV on appellant’s breach
of express warranty cause of action, we conclude the error was harmless because
the trial court did not include any damages in the judgment against McGinty
individually for breach of express warranty.  We overrule the remainder of
McGinty’s first cross-issue on appeal.

V.        Did
appellant fail to prove any measure of legally recoverable damages?

            In
their second cross-issue on appeal, appellees assert the trial court erred when
it denied their motion for JNOV on appellant’s breach of contract action
because, according to appellees, appellant did not prove any measure of legally
recoverable damages.  More specifically, appellees contend the judgment should
be reversed because (1) the cost of repair exceeds the value of the house; (2)
appellant failed to establish that his repair costs were reasonable and
necessary; and (3) appellant failed to submit evidence of the cost of repair at
the time of the injury.  We address each contention in turn.

            A.        Does
the cost to repair appellant’s house constitute economic waste?

            Initially,
appellees argue appellant should not recover the cost to repair his residence
as his damages because, according to appellees, repair of the house constitutes
economic waste.  We disagree.

            In
cases concerning defective construction issues, Texas courts generally allow
damages based on the cost of repairs if repairs are feasible and do not involve
economic waste.  Jim Walter Homes, Inc. v. Gonzalez, 686 S.W.2d 715, 717
(Tex. App.—San Antonio 1985, writ dism’d).   If the repair of the defects
requires that the structure in whole or material part be changed or would
impair the structure as a whole, then the cost of repair would constitute
economic waste.  Id.  In that situation, the proper measure of damages
would be the difference in the value of the structure as constructed and its
value had it been constructed without defects.  Id.

In their brief, appellees
contend the cost to repair, $651, 230.72, exceeds the value of appellant’s
house.  In making this argument, appellees point out appellant’s testimony that
the value of his unrepaired home at the time of trial was approximately
$450,000.  However, in making their argument, appellees ignore appellant’s
testimony that the true market value of his home was $875,000.  See Porras
v. Craig, 675 S.W.2d 503, 504 (Tex. 1984) (homeowner can render opinion as
to the market value of his real property).  As the fact finder, the jury was
entitled to resolve that issue and they did so in favor of appellant.  In
addition, appellees do not point out any evidence in the appellate record
establishing that repair of the defects in appellant’s house would materially
change the structure or impair the structure as a whole.  Also, appellees do
not cite any evidence in the appellate record establishing that the cost to
demolish appellant’s house and then completely rebuild it would be less than
the cost to repair the defects.   Finally, the issue of economic waste was not
submitted to the jury.  We conclude the trial court acted properly when it
denied appellees’ motion for JNOV on the basis that the cost of repair was not
an appropriate measure of damages because the cost exceeded the value of
appellant’s home.  See Brighton Homes, Inc. v. McAdams, 737 S.W.2d 340,
342–43 (Tex. App.—Houston [14th Dist.] 1987, writ ref’d n.r.e.) (stating that
the cost of repair at the time of trial was an appropriate measure of damages as
the injury continued to cause damage to other parts of the house).

B.        Did
appellant establish that his repair costs were reasonable and necessary?

Next, appellees argue the
trial court erred when it denied their motion for JNOV on all of appellant’s
causes of action because there is no evidence that appellant’s repair costs
awarded by the jury were reasonable.  Once again, we disagree.

Appellees are correct that
a party seeking recovery for the cost of repairs must prove their reasonable
value.  Hernandez v. Lautensack, 201 S.W.3d 771, 777 (Tex. App.—Fort
Worth 2006, no pet.).  To establish the right to recover the costs of repair,
it is not necessary for a claimant to use words such as “reasonable” and
“necessary;” a claimant need only present sufficient evidence to justify a
jury’s finding that the costs were reasonable and the repairs necessary.  Id. 
Here, appellant presented the testimony of two experts: Mike Krismer and Richard
Guerra-Pratts.

Krismer testified that he
is a certified Indoor Environmental Consultant and has been involved in the
construction business for more than twenty years.  Krismer also testified that
he owns a consulting firm that investigates buildings that have some type of
defect, are experiencing water damage, or just are not “working the way they
should be working.”  Krismer explained to the jury that he was retained to perform
a water damage assessment of appellant’s home.  Krismer testified that in the
process of inspecting appellant’s home, he relied on the PE Services report as
well as various building codes applicable to appellant’s home.  Krismer then
testified at length about the litany of construction defects he found in
appellant’s home and what would be necessary to stop the water penetration and
thereby the growth of the mold contamination.  These defects included, but were
not limited to: (1) the construction of the exterior envelope of the house was
deficient which would necessitate the removal of the stucco; (2) the doorway
leading out of the media room and onto an exterior balcony was not properly
constructed as there was no transition between the inside and the outside,
which allowed water penetration; (3) none of the windows and doors in the house
had head flashing; and (4) the tile roofing on all of the decks were not
properly constructed because the wrong roofing membrane was used.  Krismer also
prepared a mold remediation plan for appellant’s home.

Guerra-Pratts testified that
he had been a general contractor in the Corpus Christi area for more than
thirty years and, at the time of trial, he specialized in interior and exterior
renovations of residential and commercial properties.  Guerra-Pratts also
testified that he is a certified mold remediator and is licensed by the State
of Texas as a mold remediation contractor.  Guerra-Pratts then testified at
length about the work that was needed to remediate the mold problem in
appellant’s home and then build the house back.  He also informed the jury what
that work would cost, based on Houston, Texas price guidelines, as of January
22, 2007: $651,231.72.  In addition, Guerra-Pratts’ written estimate of that
work and the cost was admitted into evidence.

We conclude this is
legally sufficient evidence that the repair costs found by the jury were
reasonable and that the trial court acted correctly when it denied appellees’
motion for JNOV based on the argument that there was legally insufficient
evidence that the cost to repair appellant’s house was reasonable.

C.        Was
appellant, in order to recover damages from VBD, required to introduce evidence
of the cost of repair at the time of the injury?

Finally, appellees
contend the trial court should have granted their motion for JNOV because
appellant did not introduce evidence of the cost of repair at the time of the
injury but instead he introduced only the cost in 2007.  In support of this
argument, they cite a 1948 truck wreck case from the Texarkana court of
appeals: Victory Truck Lines, Inc. v. Brooks.  See 218 S.W.2d
899, 900 (Tex. Civ. App.—Texarkana 1948, no writ) (holding that costs of repair
determined more than sixteen months after a truck crashed into the plaintiff’s
store was an incorrect measure of damages).

We conclude the disposition
and reasoning in Victory Truck Lines do not control the disposition here. 
First, it is not binding precedent on this court.  Second, Victory Truck
Lines is factually distinguishable from the present case as it involved a
truck crashing into the plaintiff’s store, not a construction defect causing
long term, continuing damage.  Instead, we believe the facts of this case are
more closely aligned with a prior case of this court, the Brighton Homes case
cited above.  Brighton Homes, Inc., 737 S.W.2d at 341.  In Brighton
Homes, the plaintiffs alleged their home had a crack in the slab foundation
which the defendant attempted, without success, to repair.  Id.  Instead,
the problem became worse, allowing both water and insects to enter the home
causing damage in other parts of their house.  Id.  Ultimately, the case
went to trial where the plaintiffs were successful.  On appeal, Brighton Homes
asserted the damages issues submitted to the jury were “fatally defective because
neither measures the alleged damages at the time the DTPA was violated.”  Id.
at 342.  We stated: “Brighton Homes seeks to fix the time of the injury at the
time the foundation is alleged to have failed.”  Id. at 343.  We then disagreed
with that argument as follows:

[a]t common law, when one isolated event does not cause all
the damage to the property, but rather the total damage is the result of a
continuing cause, actual damage is not determined immediately after the injury
begins.  Where there is a continuing cause of damage, measuring the damage
immediately after the initial injury would be unduly restrictive and would not
compensate the plaintiffs fully for their injury.

Id.
(internal citations omitted).  Because the cost of repair damages included in
the judgment was appropriate, we conclude the trial court correctly denied
appellees’ motion for JNOV on this issue.  Having addressed and rejected each
argument raised by appellees in their second cross-issue, we overrule that
cross-issue.[5]

Conclusion

            Having
sustained appellant’s first issue, we reverse the final judgment in part and remand
to the trial court for a calculation of appellant’s pre-judgment interest. 
Having sustained appellant’s second issue, we modify the final judgment to
include the following: appellant, Thomas J. Hennen, shall recover from
appellee, Villas By Design, Inc., (1) his reasonable attorney’s fees for
preparation and trial in the amount of $175,000.00, (2) his reasonable
attorney’s fees of $15,000.00 for the successful appeal of this matter to this
court; and, (3) in the event of a successful appeal of this matter to the
Supreme Court of Texas, the additional amount of $10,000.00; and we affirm in
part as modified.  We affirm the remainder of the final judgment.

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Seymore. (Frost, J., Dissenting.)









[1] Appellant alleged that
both VBD and McGinty violated the DTPA in two ways: (1) engaging in a false,
misleading, or deceptive act or practice, and (2) committing an unconscionable
act or course of action.  Appellant also alleged that both VBD and McGinty breached
an express warranty as well as the  implied warranty of habitability. 





[2] Appellees moved for JNOV
on the issue of appellant’s attorney’s fees.  According to appellees, there was
legally insufficient evidence to support the jury’s award of attorney’s fees. 
In its order, the trial court did not expressly rule on that part of appellees’
JNOV.  





[3] At the time appellant
filed his Fifth Amended Petition, his live pleading at the time of trial, there
were defendants in addition to the two appellees.





[4] Because appellant has
only challenged the trial court’s failure to enter judgment against McGinty for
breach of warranty, we need not address appellees’ cross-issue dealing with the
breach of warranty causes of action against VBD. 
Tex. R. App. P. 47.1. 





[5] Because appellees’
remaining cross-issues address only appellant’s negligence and DTPA causes of
action, which we have already determined are barred by limitations, we need not
address them.  Tex. R. App. P. 47.1.