**Thomas J. HENNEN, Appellant,**

v.

**Jerry McGINTY and Villas by Design, Inc., Appellees.**

**No. 14–08–00983–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 20, 2011.

Rehearing Overruled March 3, 2011.

Peter E. Ferraro, John Foster Melton, Austin, for Appellant.

Patricia Hair, Kathleen Hopkins Alsina, Houston, for Appellees.

Panel consists of Justices ANDERSON, FROST, and SEYMORE.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant, Thomas J. Hennen, contracted with appellee, Villas By Design, Inc., ("VBD") for the construction of his residence. The second appellee, Jerry McGinty, is the owner and manager of VBD. Appellant, dissatisfied with the quality of the construction, as well as appellees' efforts to correct the problems, filed suit asserting numerous causes of action against several defendants, including appellees. The case eventually went to trial with only appellees as defendants and the jury found in favor of appellant on most of appellant's causes of action. Following the verdict, appellees moved for judgment notwithstanding the verdict, which the trial court granted in part and denied in part. The trial court then rendered judgment in favor of appellant only on his breach of contract cause of action against VBD in the amount of $651,230.72. Appellant now appeals from that judgment in his favor.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant purchased a vacant lot facing Galveston Bay from Villas By the Sea, L.L.C. in February 2001. Appellant signed an earnest money contract (the "Earnest Money Contract") with VBD to construct a residence on that lot in May 2001. McGinty signed the Earnest Money Contract on behalf of VBD. The Earnest Money Contract provided that VBD warranted the home in accord with the terms of a limited home warranty provided by a third party: ACES, Inc. As the residence was nearing completion, appellant needed to close on its purchase for purposes of permanent financing. As a result, on September 18, 2002, the parties entered into a second contract regarding the completion of specified "punch list" items (the "Punch List Contract"). Again, McGinty signed on behalf of VBD. Appellant moved into the house in November 2002.

Once appellant moved into his house, he began to experience a litany of problems. Appellant struggled to get VBD to successfully address those problems as well as completing the punch list items. Among the problems experienced by appellant was water intrusion into his house. The evidence reveals that prior to June 20, 2003, appellant was aware of leaks/water intrusion in numerous areas of his house. These areas included, but were not limited to, the dining room windows; the "Bridge," an elevated walkway connecting different areas of his house; the windows in the library that were located under the Bridge; the windows on either side of the Bridge; the garage; and the media room near a set of French doors.

These problems with water intrusion were well documented in appellant's communications with appellees. For example, on June 17, 2003, appellant wrote VBD:

> Will you and TNR be addressing "all" the window issues? ... Also, are the window "weephole" issues strictly an issue of stucco/paint having covered them, or is there any window defect issue associated with the "leak" problems encountered? On that note, the horizontal fram-

ing above the walkway column capitals, is leaking again. . . .

Additionally, it appears that the whole reason for this specific stucco job in the first place, that of repairing leakage, may not be completely repaired. You had indicated that there may still be problems with the upper level windows causing continuing leakage. This problem must be corrected. * * * * * The leak is still there* * * * *

In an email sent on June 19, 2003, appellant asked VBD to return the keys to his house and informed VBD that, commencing June 23, 2003, he would begin pursuing all legal recourse available to him.

The next day, June 20, 2003, appellant sent a lengthy email to VBD advising that he had met with a lawyer and now had an understanding of the Texas Residential Liability Act. Appellant also pointed out the continuing problem with leaks, including a "newly discovered problem with an interior library window casement. It appears it may have experienced water leakage." Appellant then repeatedly mentioned the possibility of litigation over the leaks and other issues; then warned: "I have another appointment Monday with my attorney to begin the process."

On July 4, 2003, appellant found extensive and noticeable mold damage to the vertical walls going up to the ceiling in an upstairs bathroom. On July 10, 2003, appellant retained a lawyer to represent him in the ongoing dispute with VBD. In August, appellant's lawyer recommended that appellant have his home inspected for mold. On August 20, 2003, a company called PE Services inspected appellant's house and conducted mold testing. PE Services issued its report on October 7, 2003. PE Services determined there was significant fungal contamination throughout the house. After appellant had received the PE Services' report, water damage and mold was identified in the exterior walls, interior walls, ceilings, flooring, around several plumbing fixtures, and inside the HVAC systems. Appellant learned that water penetration in the house was so widespread that to repair the damage would require the replacement of the entire roof, the replacement of all of the home's stucco, and the replacement of every window in the house. It was further determined that the total cost to repair the house would be $651,230.72.

Despite appellant's June 20, 2003 warning that he was about to begin the legal process, suit was not filed until June 22, 2005. Appellant sued VBD for breach of both the Earnest Money Contract and the Punch List Contract, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and breach of express and implied warranties. Appellant also sued McGinty for negligence, violations of the DTPA, breach of express and implied warranties, and breach of the Punch List Contract.[1] Appellant also sought attorney's fees and exemplary damages.

Prior to trial, the trial court granted in part and denied in part a motion for summary judgment filed by appellees. The trial court determined that McGinty was not liable in his individual capacity on the Earnest Money Contract. It also determined that appellant had waived any implied warranties.

The case eventually went to trial on the remaining claims and the trial court submitted the case to the jury on nineteen questions. With respect to McGinty, the jury found that he (1) was negligent (Ques-

1. Appellant alleged that both VBD and McGinty violated the DTPA in two ways: (1) engaging in a false, misleading, or deceptive act or practice, and (2) committing an unconscionable act or course of action. Appellant also alleged that both VBD and McGinty breached an express warranty as well as the implied warranty of habitability.

tion 1); (2) breached an express warranty and the implied warranty of good and workmanlike performance (Question 10); (3) engaged in a false, misleading, or deceptive act or practice that appellant relied on to his detriment (Question 11); (4) engaged in unconscionable conduct (Question 12); and (5) acted knowingly and/or intentionally (Question 14).

With respect to VBD, the jury found that VBD had (1) breached the Earnest Money Contract (Question 4); (2) breached the Punch List Contract (Question 7); (3) breached an express warranty and the implied warranty of good and workmanlike performance (Question 9); (4) engaged in a false, misleading, or deceptive act or practice that appellant relied on to his detriment (Question 11); (5) engaged in unconscionable conduct (Question 12); and (6) acted knowingly and/or intentionally (Question 14).

In response to the damage questions for each cause of action, the jury found actual damages in the amount of $262,885.83 for diminution in value after repairs and $651,230.72 for cost of repair. In response to Question 15, the jury awarded exemplary damages against both McGinty and VBD for $750,000.00 each. In response to Question 17, the jury determined that appellant's reasonable and necessary attorney's fees were $175,000.00 for preparation and trial, $15,000.00 for an appeal to the court of appeals, and an additional $10,000.00 for an appeal to the Supreme Court of Texas.

Appellees submitted Questions 18 and 19 regarding their limitations affirmative defense. With respect to both, the jury found that October 20, 2003, the date appellant obtained the first mold report, was the date by which appellant should, in the exercise of reasonable diligence, have discovered appellees' negligence, breach of warranty, false, misleading, or deceptive acts, or unconscionable conduct.

Following the verdict, appellees filed a motion to disregard the jury findings and for judgment notwithstanding the verdict ("JNOV"), which the trial court granted in part and denied in part. Specifically, the trial court granted the motion to disregard the jury's answers to Questions 18 and 19 and found that all causes of action based upon the DTPA and negligence were barred by limitations. The trial court also granted appellees' motion to disregard Question 8, the Punch List Contract damages question, on the basis that there was no evidence that a breach of the Punch List Contract created the necessity for remediation and rebuilding of appellant's home. The trial court denied the motion based upon the arguments that appellant failed to prove any legally recoverable damages and that the economic loss rule barred any recovery. The trial court denied as moot the arguments that there was no evidence that McGinty breached the standard of care, that there was no evidence that McGinty gave an express or implied warranty, and that there was no evidence to support a finding of liability under the DTPA.

On September 16, 2008, the trial court signed and entered judgment against VBD and in favor of appellant, finding that appellant should recover the amount of $651,230.72 from VBD and that he take nothing from McGinty. Under the judgment appellant was not awarded attorney's fees or prejudgment interest.

On October 6, 2008, appellant filed a motion for judgment along with a proposed judgment. The motion requested that the trial court award appellant his attorney's fees, interest, and also enter judgment against McGinty individually since the statute of limitations for warranty claims is four years. The trial court did not modify its judgment in response to this motion

and it was overruled by operation of law. This appeal followed.

## DISCUSSION

Appellant brings four issues on appeal. In addition, appellees assert five cross-issues on appeal. We address only those necessary to the final disposition of this appeal. Tex.R.App. P. 47.1.

### I. Did the trial court err when it did not include prejudgment interest in the final judgment?

In his first issue, appellant contends the trial court erred when it did not include an award of prejudgment interest in the final judgment. We agree.

A prevailing party receives prejudgment interest as a matter of course. *Baker Hughes Oilfield Operations, Inc. v. Hennig Production Co.*, 164 S.W.3d 438, 447 (Tex.App.-Houston [14th Dist.] 2005, no pet.). In addition, the Texas Finance Code specifically provides that prejudgment interest is recoverable on claims of property damage. *See* Tex. Fin.Code Ann. § 304.102 (West 2006). The damages asserted by appellant, and found by the jury, constitute property damage. We hold the trial court erred when it did not include prejudgment interest in the final judgment. *See Olympia Marble & Granite v. Mayes*, 17 S.W.3d 437, 441 (Tex.App.-Houston [1st Dist.] 2000, no pet.). Accordingly, we sustain appellant's first issue on appeal.

### II. Did the trial court err when it did not include an award of appellant's attorney's fees in the judgment?

In his second issue, appellant asserts the trial court erred when it did not include an award of his reasonable and necessary attorney's fees.[2] In response,

appellees respond only that the trial court's failure to award appellant his attorney's fees was harmless error.

Whether a party is entitled to recover attorney's fees is a question of law for the trial court, which we review de novo. *See Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94–95 (Tex.1999). A party may recover reasonable attorney's fees in a suit founded on a claim for breach of contract. Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (West 2008). The party must prevail and recover damages on a cause of action for which the recovery of attorney's fees is allowed. *Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex.1997). Under section 38.001, an award of attorney's fees is mandatory if there is proof of the reasonableness of the fees. *Id.; Recognition Communs., Inc. v. Am. Auto. Ass'n, Inc.*, 154 S.W.3d 878, 891 (Tex.App.-Dallas 2005, pet. denied); *Budd v. Gay*, 846 S.W.2d 521, 524 (Tex.App.-Houston [14th Dist.] 1993, no writ). A determination of reasonable attorney's fees is a question for the trier of fact. *Cordova v. Southwestern Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 446 (Tex.App.-El Paso 2004, no pet.) (citing *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex.1991)). A trial court does not have the discretion to completely deny attorney's fees if they are proper under section 38.001. *Id.*

Here, appellant's lead trial counsel testified that appellant's attorneys had spent between 500 and 700 hours working on the case. He also testified that he had been licensed in the State of Texas since 1980 and had tried cases in Harris County. In addition, he testified that a reasonable rate in Harris County for attorneys with their experience was $350 to $450 per hour. Appellant's lead trial counsel also

---

2. Appellees moved for JNOV on the issue of appellant's attorney's fees. According to appellees, there was legally insufficient evidence to support the jury's award of attorney's fees. In its order, the trial court did not expressly rule on that part of appellees' JNOV.

testified that appellant had a contingent fee agreement with his attorneys and that all hours spent were necessary to the prosecution of the case. Appellant's trial counsel further testified that his co-counsel had kept written records of the time spent on appellant's case and 500 hours was a very low estimate of the amount of time spent on appellant's case. Appellant's trial counsel testified that a reasonable and necessary fee for preparation and trial of appellant's case would be $175,000. In addition, appellant's trial counsel testified that if the case were appealed to the court of appeals, the cost, if fees were charged on an hourly basis, would be between $15,000 and $20,000. Finally, he testified that if it were appealed to the Texas Supreme Court, the cost would be an additional $10,000.

The jury found that VBD breached the Earnest Money Contract and determined that, as a result of VBD's breach, appellant suffered significant damage. In addition, the jury determined that appellant's reasonable attorney's fee for preparation and trial was $175,000. It also found that $15,000.00 was the cost for an appeal to the court of appeals, and an additional $10,000.00 for an appeal to the Supreme Court of Texas. We conclude the evidence recited above is some evidence supporting the jury's finding. Accordingly, we hold the trial court erred when it did not include an award of appellant's reasonable attorney's fees in the final judgment. *See Cordova*, 148 S.W.3d at 446. We sustain appellant's second issue on appeal.

## III. Are appellant's negligence and DTPA causes of action barred by limitations?

In his third issue, appellant asserts the trial court erred when it disregarded the jury's answers to questions 18 and 19 in the jury charge and dismissed appellant's negligence and DTPA causes of action based on limitations. In essence, appel-lant argues the statute of limitations should not begin to run until he discovered the full extent of the harm he suffered as a result of the appellees' allegedly negligent or deceptive acts. In response, appellees assert the trial court correctly dismissed those claims because the evidence conclusively established that the two-year statute of limitations applicable to appellant's negligence and DTPA causes of action began to run more than two years before appellant filed suit on June 22, 2005. We agree with appellees.

### A. The standard of review.

■ JNOV is proper when the evidence is conclusive and one party is entitled to prevail as a matter of law, or when a legal principle precludes recovery. *Autry v. Dearman*, 933 S.W.2d 182, 190 (Tex.App.-Houston [14th Dist.] 1996, writ denied). When a claim is barred by limitations, judgment on the verdict is precluded and JNOV is proper. *Id.* at 190–91. An appellate court will affirm a JNOV when the record demonstrates that a claim found by the jury is barred as a matter of law. *Id.* at 191.

### B. Limitations bars appellant's negligence and DTPA causes of action.

A party must assert a claim for negligence no more than two years after the day the cause of action accrues. Tex. Civ. Prac. & Rem.Code Ann. § 16.003 (West Supp.2009). DTPA claims must be brought within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. Tex. Bus. & Com.Code Ann. § 17.565 (West 2002).

Generally, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of the injury. *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex.1998). This is true even if the

fact of injury is not discovered until later and even if all resulting damages have not yet occurred. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996). In certain, limited circumstances, Texas courts apply the discovery rule as an exception to the general accrual rule. *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1994). To apply, the discovery rule requires that the injury be inherently undiscoverable and objectively verifiable. *Id.* When applied, the discovery rule tolls the running of limitations until the plaintiff discovers the injury, or acquires knowledge of facts which, in the exercise of reasonable care and diligence, would lead to the discovery of the wrongful act and resulting injury. *Li v. University of Texas Health Science Ctr. at Houston*, 984 S.W.2d 647, 652 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) (citing *S.V.*, 933 S.W.2d at 4). In cases where the discovery rule applies, accrual occurs, and limitations begin to run, when the plaintiff knew or should have known of the wrongfully caused injury, not when the plaintiff knew of the specific nature of each wrongful act that may have caused injury. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex.1999). Once a plaintiff knows, or in the exercise of reasonable diligence should have known of the injury, "the limitations clock is running, even if the claimant does not yet know; the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it." *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex.2004).

■ Assuming without deciding that the discovery rule applies to appellant's negligence claims, we conclude the evidence, recounted above, conclusively demonstrates that appellant's negligence and DTPA causes of action accrued more than two years before appellant filed suit on June 22, 2005. Appellant's own communications with appellees reveal that, by June 20, 2003, at the latest, he knew, or should have known, that he had suffered a legal injury. In fact, in his June 20, 2003 email, appellant threatened imminent legal action. Curiously, he waited more than two years to follow through with this threat. Therefore, even though appellant may not have known on June 20, 2003 that he had a problem with mold growing throughout his house, we hold the limitations clock was running on appellant's negligence and DTPA causes of action at that point in time. *See Cornerstones Mun. Util. Dist. v. Monsanto Co.*, 889 S.W.2d 570, 576 (Tex. App.-Houston [14th Dist.] 1994, writ denied) (holding that discovery rule tolled limitations only until plaintiff learned of damaged pipe, rather than until plaintiff discovered widespread problems with the sewer system, because knowledge of the damaged pipe would cause a reasonably prudent person to make an inquiry that would lead to the discovery of the system-wide problems); *Bayou Bend Towers Council of Co-Owners v. Manhattan Construction Co.*, 866 S.W.2d 740, 743–45 (Tex. App.-Houston [14th Dist.] 1993, writ denied) (concluding that, even under the discovery rule, limitations began to run upon the discovery of water leaks in roof because this discovery would cause a reasonable person to make an inquiry that would lead to the discovery of the cause of the leaks). Because appellant did not file suit until June 22, 2005, his negligence and DTPA causes of action were barred by limitations and the trial court was correct to grant appellees' JNOV on that basis. We overrule appellant's third issue on appeal.

## IV. Did the trial court err when it failed to enter judgment against McGinty individually for breach of warranties?

In his live pleading at the time of trial, appellant asserted appellees had breached

both express and implied warranties. Appellant asserted these claims as both DTPA and separate breach of warranty causes of action. However, in that pleading, appellant expressly excluded appellees from his breach of the implied warranty of good and workmanlike performance of their services allegations.[3] During the charge conference, appellees objected to the submission of the separate warranty questions on the basis of no evidence to support their submission as well as the lack of pleading. The trial court overruled their objections and submitted the separate breach of warranty questions.

In response to Question 10, the jury found that McGinty had failed to comply with express warranties as well as the implied warranty of good and workmanlike performance. The jury also found that appellant had been damaged as a result of those breaches. Following the verdict, McGinty moved for JNOV on those claims on the basis that there was no evidence to support a finding that McGinty gave appellant any express or implied warranties. In the order on appellees' motion for JNOV, the trial court appears to have found that appellant's separate warranty claims fell under the two-year DTPA statute of limitations and did not address appellees' no evidence arguments as moot. The trial court then rendered a final judgment that did not include any damages for breach of express and implied warranties by McGinty.

In his fourth issue, appellant contends the trial court erred when it did not enter judgment against McGinty for breach of express warranties and breach of the implied warranty of good and workmanlike

performance. In their first cross-issue on appeal, appellees contend the trial court erred when it did not dismiss all warranty claims against both McGinty and VBD.[4] We address these issues together.

### A. Breach of the Implied Warranty of Good and Workmanlike Performance of Services.

■ Initially, McGinty contends the trial court erred in submitting to the jury the issue of whether he breached the implied warranty of good and workmanlike performance of services because appellant did not include that cause of action in his Fifth Amended Petition. We agree. Not only did appellant not plead this cause of action, he expressly excluded McGinty from it: "[a]ll these Defendants, with the exception of Jerry McGinty and Villas By Design, gave implied warranties of good and workmanlike performance."

■ Jury questions must be supported by the pleadings. *See* Tex.R. Civ. P. 278 ("The court shall submit the questions, instructions, and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence."); *Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 380 (Tex.App.-Dallas 2009, no pet.). "Although issues may be tried by consent, 'written pleadings, before the time of submission, shall be necessary to the submission of questions....'" *Id.* (quoting Tex. R. Civ. P. 67). There can be no trial by consent when the complaining party properly objects to the submission of issues not raised by the pleadings. *Id.* A clear abuse of discretion exists when the trial court submits a jury question that is not supported

---

3. At the time appellant filed his Fifth Amended Petition, his live pleading at the time of trial, there were defendants in addition to the two appellees.

4. Because appellant has only challenged the trial court's failure to enter judgment against McGinty for breach of warranty, we need not address appellees' cross-issue dealing with the breach of warranty causes of action against VBD. Tex.R.App. P. 47.1.

by the written pleadings, nor tried by consent. *Id.*

Here, McGinty objected to the submission of the implied warranty of good and workmanlike performance of services question on the basis that it had not been pled. The trial court overruled the objection and submitted the question to the jury, which, in turn, answered the question affirmatively. We conclude the trial court abused its discretion when it overruled McGinty's objection to the submission of the implied warranty question and included it in the jury charge. Because the issue should not have been submitted to the jury, we overrule appellant's fourth issue to the extent it contends the trial court erred in not entering judgment against McGinty for breach of the implied warranty of good and workmanlike performance of services. *See Hall v. Hubco, Inc.*, 292 S.W.3d 22, 27 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (stating a trial court may disregard a jury finding if it is immaterial and that a finding is immaterial if it should not have been submitted to the jury). Because the trial court ultimately did not include any damages for breach of the implied warranty of good and workmanlike performance of services in the judgment, we conclude the error in submitting the issue to the jury was harmless. We overrule McGinty's first cross-issue on appeal as it applies to appellant's breach of the implied warranty of good and workmanlike performance of services cause of action.

### B. Breach of express warranties.

In the second part of his fourth issue, appellant complains of the trial court's failure to include the damages found by the jury for McGinty's breach of express warranties. In the second half of his first cross-issue, McGinty contends there is no evidence that McGinty gave any express warranty that resulted in

damages to appellant. Once again, we agree with McGinty.

It is well-established that express warranties are enforced in service transactions. *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex. 1991). The elements of a claim for breach of warranty for services are (1) the defendant sold services to the plaintiff; (2) the defendant made a representation to the plaintiff about the characteristics of the services by affirmation of fact, by promise, or by description; (3) the representation became part of the basis of the bargain; (4) the defendant breached the warranty; (5) the plaintiff notified the defendant of the breach; and (6) the plaintiff suffered injury. *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 886 (Tex.App.-Dallas 2007, no pet.) (citing *Southwestern Bell Tel. Co.*, 811 S.W.2d at 576–77 & n. 3). Appellant's breach of express warranty cause of action founders on the first element because there is no evidence in the record that McGinty, individually, sold any services to appellant. Therefore, we overrule the second half of appellant's fourth issue. In addition, while the trial court should have granted McGinty's motion for JNOV on appellant's breach of express warranty cause of action, we conclude the error was harmless because the trial court did not include any damages in the judgment against McGinty individually for breach of express warranty. We overrule the remainder of McGinty's first cross-issue on appeal.

### V. Did appellant fail to prove any measure of legally recoverable damages?

In their second cross-issue on appeal, appellees assert the trial court erred when it denied their motion for JNOV on appellant's breach of contract action because, according to appellees, appellant did not

prove any measure of legally recoverable damages. More specifically, appellees contend the judgment should be reversed because (1) the cost of repair exceeds the value of the house; (2) appellant failed to establish that his repair costs were reasonable and necessary; and (3) appellant failed to submit evidence of the cost of repair at the time of the injury. We address each contention in turn.

## A. Does the cost to repair appellant's house constitute economic waste?

■ Initially, appellees argue appellant should not recover the cost to repair his residence as his damages because, according to appellees, repair of the house constitutes economic waste. We disagree.

■ In cases concerning defective construction issues, Texas courts generally allow damages based on the cost of repairs if repairs are feasible and do not involve economic waste. *Jim Walter Homes, Inc. v. Gonzalez,* 686 S.W.2d 715, 717 (Tex. App.-San Antonio 1985, writ dism'd). If the repair of the defects requires that the structure in whole or material part be changed or would impair the structure as a whole, then the cost of repair would constitute economic waste. *Id.* In that situation, the proper measure of damages would be the difference in the value of the structure as constructed and its value had it been constructed without defects. *Id.*

In their brief, appellees contend the cost to repair, $651, 230.72, exceeds the value of appellant's house. In making this argument, appellees point out appellant's testimony that the value of his unrepaired home at the time of trial was approximately $450,000. However, in making their argument, appellees ignore appellant's testimony that the true market value of his home was $875,000. *See Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984) (homeowner can render opinion as to the market value of his real property). As the fact finder, the jury was entitled to resolve that

issue and they did so in favor of appellant. In addition, appellees do not point out any evidence in the appellate record establishing that repair of the defects in appellant's house would materially change the structure or impair the structure as a whole. Also, appellees do not cite any evidence in the appellate record establishing that the cost to demolish appellant's house and then completely rebuild it would be less than the cost to repair the defects. Finally, the issue of economic waste was not submitted to the jury. We conclude the trial court acted properly when it denied appellees' motion for JNOV on the basis that the cost of repair was not an appropriate measure of damages because the cost exceeded the value of appellant's home. *See Brighton Homes, Inc. v. McAdams,* 737 S.W.2d 340, 342–43 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.) (stating that the cost of repair at the time of trial was an appropriate measure of damages as the injury continued to cause damage to other parts of the house).

## B. Did appellant establish that his repair costs were reasonable and necessary?

■ Next, appellees argue the trial court erred when it denied their motion for JNOV on all of appellant's causes of action because there is no evidence that appellant's repair costs awarded by the jury were reasonable. Once again, we disagree.

■ Appellees are correct that a party seeking recovery for the cost of repairs must prove their reasonable value. *Hernandez v. Lautensack,* 201 S.W.3d 771, 777 (Tex.App.-Fort Worth 2006, no pet.). To establish the right to recover the costs of repair, it is not necessary for a claimant to use words such as "reasonable" and "necessary;" a claimant need only present sufficient evidence to justify a jury's finding that the costs were reasonable and the

repairs necessary. *Id.* Here, appellant presented the testimony of two experts: Mike Krismer and Richard Guerra–Prats.

Krismer testified that he is a certified Indoor Environmental Consultant and has been involved in the construction business for more than twenty years. Krismer also testified that he owns a consulting firm that investigates buildings that have some type of defect, are experiencing water damage, or just are not "working the way they should be working." Krismer explained to the jury that he was retained to perform a water damage assessment of appellant's home. Krismer testified that in the process of inspecting appellant's home, he relied on the PE Services report as well as various building codes applicable to appellant's home. Krismer then testified at length about the litany of construction defects he found in appellant's home and what would be necessary to stop the water penetration and thereby the growth of the mold contamination. These defects included, but were not limited to: (1) the construction of the exterior envelope of the house was deficient which would necessitate the removal of the stucco; (2) the doorway leading out of the media room and onto an exterior balcony was not properly constructed as there was no transition between the inside and the outside, which allowed water penetration; (3) none of the windows and doors in the house had head flashing; and (4) the tile roofing on all of the decks were not properly constructed because the wrong roofing membrane was used. Krismer also prepared a mold remediation plan for appellant's home.

Guerra–Prats testified that he had been a general contractor in the Corpus Christi area for more than thirty years and, at the time of trial, he specialized in interior and exterior renovations of residential and commercial properties. Guerra–Prats also testified that he is a certified mold remediator and is licensed by the State of Texas as a mold remediation contractor. Guerra–Prats then testified at length about the work that was needed to remediate the mold problem in appellant's home and then build the house back. He also informed the jury what that work would cost, based on Houston, Texas price guidelines, as of January 22, 2007: $651,231.72. In addition, Guerra–Prats' written estimate of that work and the cost was admitted into evidence.

We conclude this is legally sufficient evidence that the repair costs found by the jury were reasonable and that the trial court acted correctly when it denied appellees' motion for JNOV based on the argument that there was legally insufficient evidence that the cost to repair appellant's house was reasonable.

**C. Was appellant, in order to recover damages from VBD, required to introduce evidence of the cost of repair at the time of the injury?**

 Finally, appellees contend the trial court should have granted their motion for JNOV because appellant did not introduce evidence of the cost of repair at the time of the injury but instead he introduced only the cost in 2007. In support of this argument, they cite a 1948 truck wreck case from the Texarkana court of appeals: *Victory Truck Lines, Inc. v. Brooks. See* 218 S.W.2d 899, 900 (Tex.Civ. App.-Texarkana 1948, *no writ*) (holding that costs of repair determined more than sixteen months after a truck crashed into the plaintiff's store was an incorrect measure of damages).

We conclude the disposition and reasoning in *Victory Truck Lines* do not control the disposition here. First, it is not binding precedent on this court. Second, *Victory Truck Lines* is factually distinguishable from the present case as it involved a truck crashing into the plaintiff's store, not a construction defect causing long term,

continuing damage. Instead, we believe the facts of this case are more closely aligned with a prior case of this court, the *Brighton Homes* case cited above. *Brighton Homes, Inc.*, 737 S.W.2d at 341. In *Brighton Homes*, the plaintiffs alleged their home had a crack in the slab foundation which the defendant attempted, without success, to repair. *Id.* Instead, the problem became worse, allowing both water and insects to enter the home causing damage in other parts of their house. *Id.* Ultimately, the case went to trial where the plaintiffs were successful. On appeal, Brighton Homes asserted the damages issues submitted to the jury were "fatally defective because neither measures the alleged damages at the time the DTPA was violated." *Id.* at 342. We stated: "Brighton Homes seeks to fix the time of the injury at the time the foundation is alleged to have failed." *Id.* at 343. We then disagreed with that argument as follows:

> [a]t common law, when one isolated event does not cause all the damage to the property, but rather the total damage is the result of a continuing cause, actual damage is not determined immediately after the injury begins. Where there is a continuing cause of damage, measuring the damage immediately after the initial injury would be unduly restrictive and would not compensate the plaintiffs fully for their injury.

*Id.* (internal citations omitted). Because the cost of repair damages included in the judgment was appropriate, we conclude the trial court correctly denied appellees' motion for JNOV on this issue. Having addressed and rejected each argument raised by appellees in their second cross-issue, we overrule that cross-issue.[5]

**5.** Because appellees' remaining cross-issues address only appellant's negligence and DTPA causes of action, which we have already de-

### CONCLUSION

Having sustained appellant's first issue, we reverse the final judgment in part and remand to the trial court for a calculation of appellant's pre-judgment interest. Having sustained appellant's second issue, we modify the final judgment to include the following: appellant, Thomas J. Hennen, shall recover from appellee, Villas By Design, Inc., (1) his reasonable attorney's fees for preparation and trial in the amount of $175,000.00, (2) his reasonable attorney's fees of $15,000.00 for the successful appeal of this matter to this court; and, (3) in the event of a successful appeal of this matter to the Supreme Court of Texas, the additional amount of $10,000.00; and we affirm in part as modified. We affirm the remainder of the final judgment.

FROST, J., Dissenting.

KEM THOMPSON FROST, Justice, dissenting.

A homeowner recovered $651,230.72 as the reasonable and necessary cost to repair his house to remedy the homebuilder's failure to comply with its contract. To affirm the trial court's judgment, we must conclude the record contains legally sufficient evidence that this amount was a reasonable and necessary cost to repair the house. Because the evidence is legally insufficient on this point, this court should reverse rather than affirm the judgment for this damage award.

### Background

In February 2001, appellant/cross-appellee Thomas J. Hennen bought a vacant lot facing Galveston Bay in Seabrook, Texas. In May 2001, Hennen and appellee/cross-

termined are barred by limitations, we need not address them. Tex.R.App. P. 47.1.

appellant Villas By Design, Inc. (hereinafter, "Villas") entered into a contract for Villas to build a house on that lot. Hennen moved into the house in November 2002 and experienced various problems, including numerous water leaks or areas of water intrusion in the house. Though Villas tried to address these problems and stop water from entering the house, Hennen continued to have problems and informed Villas of this situation. In an email sent on June 19, 2003, Hennen asked Villas to return the keys to Hennen's house and told Villas that on June 23, 2003, he would begin pursuing all available legal recourse against Villas.

After June 2003, Villas did not have access to the house and Hennen did not give Villas permission to undertake any further repairs. In July 2003, Hennen discovered extensive and noticeable mold damage to the vertical walls going up to the ceiling in an upstairs bathroom. During that same month, Hennen retained a lawyer to represent him in pursuing his claims against Villas. In August 2003, an inspection company, PE Services, inspected Hennen's house and conducted mold testing. PE Services determined significant fungal contamination permeated the house. Following Hennen's receipt of PE Services's report in October 2003, water damage and mold was identified in the exterior walls, interior walls, ceilings, flooring, areas around several plumbing fixtures, and inside the heating, ventilation, and air conditioning systems. Hennen learned that water penetration in the house was so widespread that repairing the damage would require replacement of the entire roof, all of the home's stucco, and every window in the house.

Hennen retained the services of Richard Guerra–Prats, a Corpus Christi contractor.

In its October 2003 report, PE Services documented repairs that needed to be made on the house and recommended mold remediation. According to Guerra–Prats, PE Services prepared a mold-remediation protocol. Based on this protocol, in 2003, Guerra–Prats estimated the cost to remediate the mold using this protocol and to then build back the parts of the house altered by the remediation. This 2003 estimate was not introduced into evidence at trial and was not the basis of Hennen's request for damages at trial. Though Hennen met with attorneys and had various inspections and tests performed on the house, Hennen did not file suit until June 22, 2005, two years after he denied Villas access to the house.

Between June 2003 and May 2008, when this case went to trial, no work was performed to prevent or mitigate water intrusion into the house. Consultant Mike Krismer provided Hennen with a mold-remediation protocol for the house in July 2006. Based on this protocol, in January 2007, Guerra–Prats provided Hennen with a detailed estimate as to how much it would cost, in January 2007, to remediate the mold using this protocol and to then build back the parts of the house altered by the remediation. The total cost Guerra–Prats estimated was $651,230.72.[1] This January 2007 estimate and Guerra–Prats's trial testimony are the only evidence Hennen offered at trial to meet his burden of proving the amount of the reasonable and necessary cost to repair his house. The jury found that this amount was $651,230.72, the amount of Guerra–Prats's estimate, and the trial court rendered judgment awarding Hennen this amount of damages.

1. In part of its opinion, the majority indicates that this estimate was performed in 2003. See ante at pp. 645–47. However, this estimate was made in January 2007, more than four years after the water intrusion began at the house.

## Standard of Review

In their second cross-issue on appeal, Villas and appellee/cross-appellant Jerry McGinty (hereinafter collectively, "Villas Parties") assert, among other things, that the evidence is legally insufficient to support the jury's finding that $651,230.72 was the reasonable and necessary cost to repair Hennen's house. When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005). We must credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The fact finder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

## Need for Evidence Beyond Proof of What One Contractor Would Charge

Texas has a strong public policy in favor of preserving freedom of contract. *See Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex.2008). Unless their contract is contrary to an applicable law or public policy, parties in Texas enjoy a broad freedom of contract. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex.2004). This means that contractors generally have the right to charge unreasonably high prices for their goods and services, and parties have the freedom to choose to pay unreasonably high prices for goods and services. *See id.* In light of this freedom of contract, evidence of the amounts charged or paid is not legally sufficient evidence that these charges are reasonable or necessary; instead, separate evidence must be offered that raises a fact issue regarding the reasonableness and necessity of the charges or costs in question. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200–01 (Tex.2004); *Dallas Ry. & Terminal Co. v. Gossett*, 156 Tex. 252, 294 S.W.2d 377, 382–83 (Tex.1956); *O & B Farms, Inc. v. Black*, 300 S.W.3d 418, 422–23 (Tex.App.-Houston [14th Dist.] 2009, pet. denied); *Dumler v. Quality Work By Davidson*, No. 14–06–00536–CV, 2008 WL 89961, at *4 (Tex.App.-Houston [14th Dist.] Jan. 10, 2008, no pet.) (mem. op.); *Jackson v. Gutierrez*, 77 S.W.3d 898, 904 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *Allright, Inc. v. Lowe*, 500 S.W.2d 190, 191–92 (Tex.Civ.App.-Houston [14th Dist.] 1973, no writ); *Ebby Halliday Real Estate, Inc. v. Murnan*, 916 S.W.2d 585, 589 (Tex.App.-Fort Worth 1996, writ denied).

## Sufficiency of Evidence Regarding Necessity of the Repairs

Regarding necessity, Hennen points to Krismer's expert testimony. Though Krismer did testify regarding various construction defects in the house, Krismer did not testify as to the amount of any alleged repair costs or damages. Nor did Krismer testify that his remediation plan was reasonable or necessary. At trial, there was no direct evidence that it would cost $651,230.72 to make the necessary repairs to the house. Nor was there evidence that Villas's breaches of contract in constructing the house resulted in damages that would cost $651,230.72 to repair. Instead, Hennen relied upon Guerra–Prats's testimony that it would cost this amount in January 2007 to remediate the mold using Krismer's protocol and to then build back the parts of the house altered by the remediation. After four years of water intrusion into the house with no effort to prevent or mitigate this intrusion, Guerra–Prats estimated how much he would charge to remediate the mold and restore

the house after remediation. Even considering the evidence in the light most favorable to the jury's finding and indulging every reasonable inference that would support it, the trial evidence would not enable reasonable and fair-minded people to find that $651,230.72 was the cost of necessary repairs.

### Sufficiency of Evidence that $651,230.72 was a Reasonable Cost for the Repairs

Regarding reasonableness, Krismer did not testify as to what it would cost to implement his mold-remediation protocol. For this evidence, Hennen points to Guerra–Prats's testimony. In addition to testifying about his qualifications and experience, Guerra–Prats testified as follows:

- Guerra–Prats is a general contractor from Corpus Christi, Texas.
- In January 2007, based on Krismer's mold-remediation protocol, Guerra–Prats provided Hennen with an estimate of the costs of implementing the protocol (hereinafter, "Remediation Work") and of building back the parts of the house altered by the remediation (hereinafter, "Build Back Work").
- Guerra–Prats provided Hennen with bids to repair Hennen's house as of January 2007. In Guerra–Prats's bid for the Remediation Work, the cost to Hennen is $246,992.96. In Guerra–Prats's bid for the Build Back Work, the cost to Hennen is $404,238.76. The total of these two bids or cost estimates is $651,230.72.
- Guerra–Prats provided Hennen with detailed information reflecting the items of parts and labor that form the basis for these bids or cost estimates.

- The prices reflected in Guerra–Prats's costs estimates were generated by a software program that used Houston prices. Some of the costs came from subcontractors or historical data or jobs that Guerra–Prats had done.
- "Not every price is right, so we have to cross-reference and double check all our pricing."
- Between January 2007 and May 2008 (the time of trial), the costs for this type of work increased across the board by ten to fifteen percent.
- In coming up with the numbers for the bid for the Build Back Work, Guerra–Prats did not get competitive bids from contractors in Seabrook, Texas.

Neither Guerra–Prats nor any other witness (1) provided the jury with an opinion regarding the reasonable cost of the necessary repairs to Hennen's house or (2) testified that the pricing in the two bids or cost estimates provided by Guerra–Prats was reasonable. Guerra–Prats's testimony that some of these prices were generated by computer software based on Houston prices does not address whether these prices were reasonable. Guerra–Prats's testimony that he cross-references and double-checks all of his prices is a vague statement that does not specify any substantive standard that Guerra–Prats uses to set his prices.

There was no direct evidence at trial that a reasonable cost to repair the house was $651,230.72. Under binding precedent, Guerra–Prats's testimony that he would charge Hennen a total of $651,230.72 for the Remediation Work and the Build Back Work is legally insufficient to support a finding that this amount is a reasonable cost to repair Hennen's house.[2]

2. Even if the record contained evidence that Krismer's mold-remediation protocol was necessary, this evidence would not raise a fact issue as to whether Guerra–Prats's bids or cost estimates were reasonable. *See Dallas* *Ry. & Terminal Co.*, 294 S.W.2d at 382–83 (holding that proof certain services are necessary does not raise a fact issue as to the reasonable cost of these services).

*See Mustang Pipeline Co.*, 134 S.W.3d at 200–201; *Dallas Ry. & Terminal Co.*, 294 S.W.2d at 382–83; *O & B Farms, Inc.*, 300 S.W.3d at 422–23; *Dumler*, 2008 WL 89961, at *4; *Allright, Inc.*, 500 S.W.2d at 191–92. If Guerra–Prats had opined that the amount in question was a reasonable and necessary cost to repair the house, this testimony would have been sufficient to raise a fact issue. *See Lowe*, 500 S.W.2d at 192. Though a fact issue can be raised even if no witness uses the word "reasonable," in the case under review, this can only occur if, considering the evidence in the light most favorable to the jury's finding and indulging every reasonable inference that would support it, the record contains evidence that would enable reasonable and fair-minded people to find $651,230.72 was a reasonable and necessary cost to repair Hennen's house. *See City of Keller*, 168 S.W.3d at 827. Neither Hennen nor the majority point to any such evidence, and a review of the record fails to reveal any.

The only case the majority cites regarding this issue is *Hernandez v. Lautensack*. *See* 201 S.W.3d 771, 777 (Tex.App.-Fort Worth 2006, pet. denied). Presuming for the sake of argument that this court should follow this opinion from a sister court of appeals, the *Hernandez* case is not on point. In *Hernandez*, an expert witness testified as to how much he would charge to replace the plaintiff's roof, but no witness opined that this amount was reasonable. *See id.* Nonetheless, the *Hernandez* court found legally sufficient evidence that this amount was reasonable based on evidence that this amount was less than what the defendant himself would charge to replace the roof and proportionately less than what a third-party contractor would charge to replace part of the roof. *See id.* In the case under review, only Guerra–Prats testified concerning the amount it would cost Hennen to have the repair work done; therefore, the *Hernandez* case is not on point. *See id.*

Hennen has not paid any part of the $651,230.72, and Guerra–Prats's testimony was offered as a basis for a damage award in Hennen's favor. In this context, the requirement of independent evidence of the reasonableness of these charges is even more important to prevent excessive damage awards based on unreasonably high price quotes. Nonetheless, the majority effectively concludes that Guerra–Prats's testimony that he would charge $651,230.72 for the Remediation Work and Build Back Work is legally sufficient evidence that this amount is reasonable. This analysis conflicts with binding precedent that requires additional evidence to raise a fact issue regarding reasonableness. *See Mustang Pipeline Co.*, 134 S.W.3d at 200–201; *Dallas Ry. & Terminal Co.*, 294 S.W.2d at 382–83; *O & B Farms, Inc.*, 300 S.W.3d at 422–23; *Dumler*, 2008 WL 89961, at *4; *Allright, Inc.*, 500 S.W.2d at 191–92. This court should hold that the evidence is legally insufficient to establish that $651,230.72 was a reasonable and necessary cost to repair the house.

## Conclusion

For this court to affirm the trial court's judgment awarding Hennen $651,230.72 in damages, the trial record must contain legally sufficient evidence that this amount was a reasonable and necessary cost to repair Hennen's house. Under this court's binding precedent, if there were legally sufficient evidence that the Remediation Work and Build Back Work were necessary to repair the house and if Guerra–Prats had provided the jury with an opinion that the stated amount was a reasonable charge for this work, then the evidence would be legally sufficient. But Guerra–Prats did not provide such an

opinion, and under the applicable standard of review the trial evidence would not enable reasonable and fair-minded people to find that $651,230.72 was a reasonable and necessary cost to repair Hennen's house. Because the evidence is legally insufficient to support this jury finding, Hennen may not recover damages based on repair costs, which were the only damages awarded in the trial court's judgment. Accordingly, this court should sustain the Villas Parties' second cross-issue and reverse the trial court's judgment awarding damages based on repair costs. Because the court instead affirms this part of the trial court's judgment, I respectfully dissent.