**Affirmed as Modified in Part; Reversed and Remanded in Part; and Opinion and Dissenting Opinion filed June 26, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00941-CV

---

## UNITED NATIONAL INSURANCE COMPANY, Appellant

## V.

## AMJ INVESTMENTS, LLC, Appellee

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-37580**

---

## D I S S E N T I N G   O P I N I O N

Because I believe *McGinty v. Hennen*, 372 S.W.3d 625 (Tex. 2012) (per curiam) applies, I would reverse the trial court's judgment and render judgment that AMJ Investments, LLC, take nothing.  Therefore, I respectfully dissent.

### I. PERTINENT FACTS

The jury found actual damages of $300,000 for United's breach of contract and $300,000 for United's Insurance Code violations.  Both amounts represent the

difference between the $2.4 million United paid to AMJ on its claim[1] and the additional damages AMJ sought in its suit. AMJ attempted to prove its damages through its expert witness, Art Boutin.

Boutin has nine years of experience as an insurance adjuster determining repair estimates for storm-related damages. Here, he utilized the same techniques he had throughout his career. He began with reviewing the reports of AMJ's other expert witnesses (Peter de la Mora and Michael Krismer),[2] who had determined the scope of damages which AMJ claimed Hurricane Ike caused to the Building. Boutin also reviewed the reports of Sheffield and Johnson, with whose estimate Krone (AMJ's public adjuster) agreed regarding the roof repair. Boutin also visited the building.

Then, in preparing his estimate, Boutin used the estimating software, Xactimate. He testified generally, as did other witnesses, about how the Xactimate program works; that is, how the industry uses the program to calculate prices for the specific zip code where repairs are being estimated, based upon the price data input into the computer program. Basically, Xactimate simply calculates *estimates* for costs after the information of the items to be repaired are input into the program. Using the program, Boutin generated an approximately fifty-page estimate providing line-item estimates for repairs to the building on a room-by-room basis, with a total estimate of $3.4 million. He testified his Xactimate estimate is what Sheffield should have prepared immediately after Hurricane Ike. Subtracting the $2.4 million United paid on its claim from the $3.4 million

---

[1] United paid AMJ amounts of $700,000, then $1,491,627.48. Adding that to the additional $222,000 accounts for total payments of $2,413,627.48.

[2] AMJ did not offer the reports of de la Mora and Krismer.

contained in the estimate he prepared for trial, Boutin opined that United owed AMJ approximately $1 million in additional remedial damages.

Absent from Boutin's estimate, his one paragraph "report", and his testimony was *any* evidence that his estimate for additional costs was for reasonable and necessary repairs. The word "reasonable," in fact, is not mentioned once in Boutin's testimony.

Additionally, AMJ offered no such evidence from any other exhibit, or from any other witness, including de la Mora and Krismer. Krismer, in fact, uses the word "reasonable" only in the context of the investigation of the claim, but not as to the reasonableness of repair costs. Therefore, in light of *McGinty v. Hennen*, 372 S.W.3d 625 (Tex. 2012) (per curiam), I would hold Boutin's testimony is no evidence of the additional damages AMJ sought.

## II. ANALYSIS

In *McGinty*, shortly after moving into a recently purchased home, plaintiff noticed water leaks and mold. 372 S.W.3d at 626. A contractor's estimate of the remedial costs to repair certain areas and remove the mold was over $651,000. *Id.* Plaintiff sued the homebuilder for, among other claims, breach of contract. *Id.* Plaintiff presented testimony of an expert who used Xactimate[3] software to generate the $651,000 estimate. *Id.* at 626, 627; *Hennen v. McGinty*, 335 S.W.3d 642, 654 (Tex. App.—Houston [14th Dist.] 2011), *rev'd*, 372 S.W.3d 625 (Tex. 2012) (per curiam). The relevant damages question in the jury charge asked for the

---

[3] The software in *McGinty* was called "Exactimate," whereas the software here is called "Xactimate." I presume these names refer to the same software because neither United nor AMJ has made an issue of any difference. Further, the description of the software in both cases is substantially similar.

3

"reasonable and necessary" costs of repair—the jury answered approximately $651,000. *McGinty*, 372 S.W.3d at 626.[4]

On appeal to our court, the homebuilder argued plaintiff presented no evidence that the expert's estimated remedial costs were reasonable. *McGinty*, 335 S.W.3d at 654. Our court determined the expert's Xactimate report, coupled with testimony that his estimates were based on "Houston, Texas price guidelines, as of January 22, 2007," was legally sufficient evidence. *Id.* Notably, one justice dissented, explaining:

> [The expert's] testimony that some of these prices were generated by computer software based on Houston prices does not address whether these prices were reasonable.

*Id.* at 658 (Frost, J., dissenting).

The supreme court agreed with the dissent, holding, "A party seeking to recover remedial damages must prove that the damages sought are reasonable and necessary." *McGinty*, 372 S.W.3d at 627 (citing *Mustang Pipeline Co.*, 134 S.W.3d at 200). The court described McGinty's damages evidence as follows:

> [The plaintiff's] expert's testimony was the only evidence offered on reasonable remedial damages. *He derived his estimated costs of repair from an [Xactimate] program "that's used widely in the insurance industry."*

*Id.* (Emphasis added). The supreme court concluded this evidence was legally insufficient to support a finding that the expert's remedial damages estimates were reasonable:

> *Estimated* out-of-pocket *expenses*, like paid out-of-pocket expenses, *do not establish* that the cost of repair was reasonable. Some *other*

---

[4] I acknowledge the difference of the language in the damages question in *McGinty*; however, as discussed below, the damages questions in the present case included reasonableness and necessity elements.

4

evidence is necessary. Neither [the plaintiff's] damage expert nor any other witness testified to the reasonableness of the estimated cost. …

*Id.* at 627–28 (Emphasis added). After addressing other issues, the supreme court rendered judgment that the plaintiff take nothing. *Id.* at 629.

The same result should be reached here because Boutin did not testify that the approximately $1 million in additional costs of repair were reasonable and necessary, a fact with which the Majority opinion agrees: "And here, as in *McGinty*, no one specifically testified that the plaintiff's estimated costs of repair were reasonable and necessary." However, the Majority does not apply *McGinty*, holding there are three "dispositive aspects" distinguishing this case from *McGinty*.

First, the Majority states, "the jury was instructed to find 'the [p]olicy benefits for repair or replacement.…", it concludes that the language of the charge failed to ask the jury to find the "reasonable and necessary costs for repair or replacement," and it notes United did not object to the charge. I disagree that the charge failed to ask the jury to determine "reasonable and necessary" costs. In its entirety, Question No. 4 asked:

> What sum of money, if any, if paid now in cash, would *fairly and reasonably* compensate AMJ for its damages, if any, that were caused by such unfair or deceptive act or practice of United National which you found in Question No. 3 [Insurance Code violations]?
>
> …
>
> Answer separately, in dollars and cents, for of [sic] damages, if any:
>
> a. [P]olicy benefits for repair or replacement of AMJ's property due to the damage to the property covered under United National's policy.
>
> Answer: $300,000.00 (Emphasis added.)

Relying on *Shows v. MAN Engines & Components, Inc.*, 364 S.W.3d 348, 357–58 (Tex. App.—Houston [14th Dist.] 2012, aff'd on other grounds, 2014 WL

5

2535963 (Tex. June 6, 2014), the Majority holds this question precludes the application of the standards announced in *McGinty*, 372 S.W.3d 625 (Tex. 2012) (per curiam), because it does not include the specific phrase, "reasonable and necessary costs of repair." It is true that the above damages question did not include specific remedial damages instructions[5] for the terms "reasonable" and "necessary", or that the award was for "reasonable and necessary" repair or replacement of AMJ's property under the Policy (similar to the question submitted in *McGinty*).

However, the sums awarded here were not awarded in a vacuum—they had to have been for AMJ's losses for "policy benefits for repair or replacement covered under the Policy" which would "fairly and reasonably" compensate AMJ for its damages under the Policy; therefore, the evidence supporting the jury question must be viewed in light of *McGinty*. Hence, the damages question submitted both "reasonable" and "necessary" elements because it was submitted in the context of what was necessary under the Policy. *See Azad v. MRCO, Inc.*, No. 14-12-00165-CV, 2013 WL 6700285, at *12–13 (Tex. App.—Houston [14th Dist.] Nov. 7, 2013, pet. denied) (substitute mem. op.)

> The question submitted in *Azad* was similar to the one here:
>
> What sum of money, if any, if paid now in cash would *fairly and reasonably* compensate Plaintiffs for their damages, if any, that resulted from such failure to comply" [with the terms of the agreements between the parties.] (Emphasis added).

---

[5] In the business and consumer volume of the Texas Pattern Jury Charge, the instruction for remedial damages includes "reasonable" and "necessary" components. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business, Consumer, Insurance, Employment*, PJC 115.4 (2012) (providing "remedial damages" example instruction as "The reasonable and necessary cost to repaint *Paul Payne*'s truck.").

6

Additionally, the charge defined what type of damages could be considered as damages; specifically, lost profits. Our court held in *Azad*:

> This question *contained a reasonableness requirement* and thereby foreclosed an award based solely upon subjective beliefs about future profitability. (Emphasis added.)

*Id.* at *13. The "fairly and reasonably" element in *Azad* was tied to damages resulting from the failure to comply with an agreement and causing lost profits. The "fairly and reasonably" element here was tied to repair or replacement damages covered under the Policy. Accordingly both *Azad* and the instant case are distinguishable from *Shows, supra*, relied upon by the Majority. Both the charge in *Azad* and the charge at issue here included a context for the damages, which demonstrated that the damages were "reasonable and necessary." *Shows* did not.

Rather, in *Shows*, "[T]he jury found that 'the cost to replace the engine(s) in 2005' was $89,967 and that this amount would fairly and reasonably compensate Shows for his damages." *Shows*, 364 S.W.3d at 357. There was no broader context, as in the instant case, where the damages were tied to those covered under the Policy, or as in *Azad*, where they were tied to the failure to comply, thereby demonstrating their reasonableness and necessity.

Further, to establish that repairs are reasonable and necessary, while those specific words need not be used, there must be sufficient competent evidence to enable the jury to conclude that the repairs are necessary and the costs of repair are reasonable. *See Hernandez v. Lautensack*, 201 S.W.3d 771, 776–77 (Tex. App.— Fort Worth 2006, pet. denied) (unchallenged testimony as to repairs performed and why, as well as evidence of the charges for them, was sufficient.) In any event, United's challenge here is not directed at charge error.

Rather, United's challenge is that Boutin's estimate of repair costs is legally insufficient because he offers no testimony that the costs were reasonable and

7

necessary. United correctly asserts that a party seeking to recover remedial damages must prove that the damages sought are both reasonable and necessary. *McGinty, supra; Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200 (Tex. 2004) (per curiam). "[S]ome *other* evidence showing that charges are reasonable is required." *Dallas Ry. & Terminal Co. v. Gossett*, 156 Tex. 252, 294 S.W.2d 377, 383 (1956) (Emphasis added); *see Fort Worth Hotel Ltd. P'ship v. Enserch Corp.*, 977 S.W.2d 746, 762–63 (Tex. App.—Fort Worth 1998, no pet.) ("[M]ere proof of amounts charged or paid does not raise an issue of reasonableness and such amounts ordinarily cannot be recovered without evidence showing the charges were reasonable.") I do not believe that Boutin's testimony was such "other" evidence showing that the damages were reasonable and necessary.

Next, the Majority does not apply *McGinty* because it finds both parties used Xactimate. While it is true United and AMJ used the program, I do not adopt the Majority's reasoning that this satisfies the requirement of "other" evidence that the additional costs sought at trial were reasonable. Further, United's challenge is not that Boutin used Xactimate. Its challenge is that the Xactimate estimate, without "other" evidence establishing that the costs are reasonable and necessary, is no evidence, as *McGinty* requires.

Finally, the Majority's reference to an "agreement" between the parties that the costs of repair would be the amount calculated by Xactimate for damages AMJ sought in its suit against United is without evidentiary support. At best, the evidence reflects that Krone and Johnson agreed on some aspects of the claim—for purposes of calculating the estimate of the insurance claim, but not for purposes of trial—on the scope of the work. There is no evidence of any agreement to use Xactimate for all purposes, and at all times.

8

Even if the parties had made such an agreement when estimating the claim, there was no agreement that the parties would use Xactimate to calculate a damages model for purposes of the instant litigation. That Xactimate is the industry standard for deriving remedial cost estimates does not establish *ipso facto*, without "other" evidence, that the costs estimated by Xactimate are reasonable and necessary. *Id.; Dallas Ry. & Terminal Co.*, 294 S.W.2d at 383.[6]

I dissent because I believe the Majority improperly removes the requirements set forth in *McGinty. See also City of Alton v. Sharyland Water Supply Corporation,* 402 S.W.3d 867, 885–87 (Tex. App.—Corpus Christi 2013, pet. denied) (detailed description of methodology, specific options selected and costs associated, along with analysis of "other" factors showing reasonableness of costs is sufficient); *Ft. Worth*, *supra* (chart listing actual and estimated costs of damages and repairs, including bills for same, was insufficient); *Ron Craft Chevrolet, Inc. v. Davis*, 836 S.W.2d 672, 677 (Tex. App.—El Paso 1992, writ denied) (uncontroverted evidence of repairs, the reason for them and costs associated therewith was sufficient); *Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 694 (Tex. App.—Austin 1989, no writ) (evidence analyzing the repairs to the headliner of a motoryacht were needed and why, along with the costs to perform the repairs, was sufficient to establish the reasonableness and necessity of the repairs); *Allright, Inc. v. Lowe*, 500 S.W.2d 190, 192 (Tex. Civ. App.—Houston [14th Dist.] 1973, no writ) (receipted bills are not sufficient to show that the amounts paid were reasonable).

---

[6] AMJ cites two cases for the proposition "that the use of Xactimate to obtain reasonable materials and labor costs is consistent with the industry standard." *See Fire Ins. Exchange v. Kennedy*, No. 02-11-00437-CV, 2013 WL 441088, at *3 (Tex. App.—Fort Worth Jan. 31, 2013, pet. denied) (mem. op.); *Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 563–68 (Tex. App.—San Antonio 2011, pet. denied). Notably, *Southland* involved Boutin's use of Xactimate. 399 S.W.3d at 563–68. However, neither of the cases addressed the specific issue of whether the evidence was sufficient to support a finding that the damages awarded were reasonable.

### III. CONCLUSION

I believe the Majority is incorrect by not adhering to *McGinty* as I do not believe this case requires any different analysis. The jury was asked to determine an amount of damages for the repair or replacement of AMJ's property covered under the Policy. Boutin's Xactimate estimates are only estimates of repair costs without "other" evidence that the charges were reasonable and necessary, as *McGinty* requires. Therefore, there is no legally sufficient evidence upon which the jury could find that the additional damages were reasonable and necessary. *City of Keller*, 168 S.W.3d at 827. Accordingly, the evidence is legally insufficient to support the jury's finding of $300,000 for damages due under the Policy. I would sustain United's first issue.

Because I believe AMJ presented no evidence of compensatory damages, I likewise would hold AMJ is not entitled to the trial court's award of $178,734 as a prompt pay penalty for United's failure to pay insurance benefits, $600,000 in additional damages for United's knowing conduct, and attorney's fees.[7] Accordingly, I would reverse the trial court's judgment and render judgment that AMJ take nothing on its claims.


/s/    John Donovan
        Justice

Panel consists of Justices Christopher, Donovan, and Brown. (Christopher, J., majority).

---

[7] *See Guidry v. Environ. Procedures, Inc.*, 388 S.W.3d 845, 860 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("Having concluded that no evidence supports the trial court's award of actual damages [under Chapter 541 of the Insurance Code], we similarly conclude that the Insureds are not entitled to an award of attorneys' fees or exemplary damages.").